133 N.J. Super. 492 (1975)
337 A.2d 405
ALBERTO CIRELLI, PLAINTIFF,
v.
THE OHIO CASUALTY INSURANCE CO., AND RICHARD C. McDONOUGH, NEW JERSEY COMMISSIONER OF INSURANCE, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided April 7, 1975.
*494 Mr. Charles F. Krause, III, for plaintiff (Messrs. Riemenschneider, Krause & Vion, attorneys).
Mr. Elliott Abrutyn for defendant Ohio Casualty Insurance Co., (Messrs. Morgan, Melhuish, Monaghan, McCoid & Spielvogel, attorneys).
Ms. Maureen McGrath for defendant Richard C. McDonough, New Jersey Commissioner of Insurance (Mr. William F. Hyland, Attorney General of New Jersey, attorney).
*495 LARNER, A.J.S.C.
Alberto Cirelli instituted this action seeking a declaratory judgment relating to the nature and extent of the liability of defendant Ohio Casualty Insurance Co. (hereinafter Ohio) under an insurance policy covering the automobile owned by him. The issues were submitted to the court on a stipulation which incorporates the following operative facts.
Alberto Cirelli, the assured under the policy, sustained severe personal injuries while he was a passenger in the insured vehicle operated by his son. He subsequently died as a result of the injuries, and the executrix of his estate was substituted as plaintiff. The accident took place on March 1, 1974 in Clarkestown, New York, as a result of a collision with a vehicle owned by Mary Natelli and operated by Thomas Natelli.
The policy of insurance provided for liability coverage with limits of $15,000/$30,000 and also contained the "Basic Personal Injury Protection Endorsement" (hereinafter P.I.P.) required under the New Jersey Automobile Reparation Reform Act (N.J.S.A. 39:6A-1 et seq., hereinafter referred to as the No Fault Law).
Decedent and his son were residents of New Jersey, the insured vehicle was registered in New Jersey, and the policy was written in New Jersey. The accident took place in New York with a New York vehicle owned and operated by New York residents.
The New York vehicle of Natelli is insured by Boston Old Colony Insurance Company (hereinafter Boston) under a policy which also contains a personal injury protection endorsement required by the State of New York.
Plaintiff intends to institute an action against Natelli for decedent's pain and suffering during his lifetime and for wrongful death.
The initial issue is whether plaintiff is entitled to recover all medical expenses (approximating $120,000) incurred by decedent under the P.I.P. endorsement of the Ohio policy, *496 or whether the recovery is limited to $50,000 which is the P.I.P. limitation under New York law and the endorsement provision of the Boston policy covering the Natelli vehicle.
The additional issue raised by plaintiff seeks a declaration as to the validity and extent of enforceability of a provision in the P.I.P. endorsement which impresses a lien upon any recovery from a tortfeasor to the extent of moneys paid to the assured.

I
The Ohio policy, in accord with the New Jersey No Fault Law (N.J.S.A. 39:6A-4) affords unlimited coverage to the assured for medical expenses without any caveat respecting the place of accident. This unlimited coverage represents a deliberate legislative policy which is implemented by the clear language of the insurance contract.
The carrier contends that the circumstances of the occurrence of the accident in New York brings into play a conflict of laws problem which dictates that a $50,000 P.I.P. limit under the New York no fault law should control. This contention is wholly without merit.
The insurance company is bound by the terms of its policy  terms which are enforceable against it regardless of the locus of the accident. The interposition of an issue of conflict of laws is misplaced and has no relevancy to the contractual responsibility of defendant.
It is manifest that the coverage limitation provisions of insurance statutes or regulations are but minimum requirements and that there is no legislative prohibition against an insurance company writing a policy with limits which exceed the statutory minimums. Hence, the mere limitation contained in the New York statute (even assuming its application herein) could not relieve defendant from the consequences *497 of its solemn agreement to provide unlimited coverage for medical expenses.[1]

II
The P.I.P. endorsement of the policy contains the following provision:
5. Reimbursement and Trust Agreement. Subject to any applicable limitations set forth in the New Jersey Automobile Reparation Reform Act, in the event of any payment to any person under this endorsement:
(a) the Company shall be entitled to the extent of such payment to the proceeds of any settlement or judgment that may result from the exercise of any rights of recovery of such person against any person or organization legally responsible for the bodily injury because of which such payment is made; and the Company shall have a lien to the extent of such payment notice of which may be given to the person or organization causing such bodily injury, his agent, his insurer or a court having jurisdiction in the matter.
(b) such person shall hold in trust for the benefit of the company all rights of recovery which he shall have against such other person or organization because of such bodily injury, * * *.
By virtue of this policy provision Ohio asserts that if it is obligated to pay all the medical expenses it has a right to be reimbursed to the full extent of its payment out of any recovery plaintiff may obtain from the tortfeasor or his insurance carrier. Plaintiff and the Attorney General, on the *498 other hand, contend that the enforcement of this reimbursement agreement is in contravention of the scheme and policy of the New Jersey No Fault Law and is therefore invalid.
Under this statute the Legislature granted to an insurance carrier which paid P.I.P. benefits a right of subrogation which is circumscribed in two respects: (1) subrogation can only be pursued by intercompany arbitration against the insurer of the tortfeasor, and (2) the right of subrogation is inoperative in connection with a claim arising after January 1, 1975. N.J.S.A. 39:6A-9. Although Ohio's statutory right of subrogation is preserved because the cause of action accrued prior to January 1, 1975, is the policy provision granting full reimbursement to the company enforceable so as to reduce the recovery potential of the assured against the tortfeasor?
It is clear that the statutory pattern of the No Fault Law does not contemplate a subrogative right for P.I.P. benefits through the normal channels of court processes or through the imposition of a lien or reimbursement obligation which would affect the assured's tort recovery. The normal right of subrogation, whether equitable or contractual, is a concept which is foreign to the underlying purpose of the No Fault Law unless the tortfeasor has failed to obtain the coverage required by the act.
In fact, the termination of subrogation rights through intercompany arbitration two years after the effective date of the statute reflects the legislative intent to eliminate subrogation as a continuing remedy, with the interim provision inserted for rate-making purposes only. See discussion in Iavicoli, No Fault and Comparative Negligence in New Jersey, at 115 et seq. (1973).
The rationale of the act involves a plan by which each insurance carrier undertakes the payment of P.I.P. benefits to its assured regardless of fault and, as of January 1, 1975, without the cumbersome and uneconomic shifting of dollars from one insurance company to another through the means of subrogation. Hence, the pre-existing right of subrogation *499 against a tortfeasor was totally eliminated and there was provided the two-year interim remedy limited to intercompany arbitration.
Running parallel with the projected termination of subrogation rights of the paying carrier is the caveat that the assured cannot opt for double recovery since evidence of the damage items included in P.I.P. payments is not admissible in the action brought by the assured against the tortfeasor. N.J.S.A. 39:6A-12.
As a consequence, plaintiff's right of recovery under the survival action will be limited to the pain, suffering and disability of the decedent for the period of survival. Plaintiff's attorney properly conceded at oral argument that his client would not be entitled to double recovery for the medical expenses in an action against the tortfeasor. However, he urges that any recovery for pain and suffering should not be subject to diminution by repayment of the P.I.P. benefits to Ohio in part or in whole by virtue of the reimbursement provision in the policy.
It may be that the introductory paragraph of the Reimbursement agreement contains a contractual understanding by Ohio that the right of reimbursement is subject and subordinate to the provisions of the No Fault Law. It provides: "Subject to any applicable limitations set forth in the New Jersey Automobile Reform Act, in the event of any payment to any person under this endorsement."
Although this is couched in ambiguous terms characteristic of many insurance clauses, appropriate resolution against the scrivener under well settled law would be sufficient in itself to conclude that the reimbursement agreement has very limited application and creates no rights in the company beyond those granted in the statute. See Bryan Const. v. Employers, 60 N.J. 375 (1972); Kievit v. Loyal Protect. Life Ins. Co., 34 N.J. 475, 482; Mazilli v. Acc. & Cas. Ins. Co. of Winterthur, 35 N.J. 1 (1961).
Nevertheless, even if the agreement is construed in its literal terms without giving weight to this introductory *500 clause, it is unenforceable because it is repugnant to the provisions and intent of the very statute which established the right to P.I.P. benefits. Saffore v. Atlantic Cas. Ins. Co., 21 N.J. 300 (1956). The statutory pattern and policy dictates that the assured's recovery for pain and suffering should not be invaded by any subrogative claim of the carrier paying P.I.P. benefits.
In the ultimate, this conclusion may or may not reduce the right of Ohio to recoup its P.I.P. payments in full from the tortfeasor's insurance carrier. This depends upon the view of another tribunal, either in this jurisdiction or in the State of New York, as to the extent of liability of Boston in view of its New York P.I.P. endorsement limit of $50,000, and whether New Jersey or New York law should apply as to the limits of liability on the New York insurance contract, and whether it is enforceable by litigation or by arbitration. Undoubtedly, there are many unresolved problems relating to the potential rights of Ohio against the tortfeasor and his insurance carrier.
However, these problems cannot be determined in this litigation. And, in fact, they are problems which are irrelevant to the declaration of the rights of the plaintiff vis-a-vis Ohio. Whether Ohio may or may not recoup the payments which are due to plaintiff is but a factor characteristic of any subrogation claim, depending upon the liability of the tortfeasor, the limits of his insurance and his financial stability. Regardless of these difficulties facing Ohio, they do not and cannot affect or influence the extent of recovery to which plaintiff is entitled. The No Fault Law under which the P.I.P. payments were made does not guarantee to the company an absolute right to reimbursement of moneys paid to the assured; it only grants to it a circumscribed right to assert a claim against a tortfeasor's carrier through intercompany arbitration. This is a far cry from the creation of a lien on the cause of action which may result in a dimunition of the tort recovery by the assured.
*501 Plaintiff is therefore entitled to pursue her tort claim without being subjected to any claim by Ohio by way of lien, reimbursement or subrogation to any portion of the recovery. This determination, however, is subject to one caveat. In the event that plaintiff, because of the institution of suit in another jurisdiction whose statute does not preclude evidence of medical expenses, succeeds in recovering all or part of the medical expenses paid by Ohio, equitable principles dictate that such recovery be reimbursed to Ohio. In this manner, the avoidance of double recovery inhibited by the New Jersey No Fault Law will be carried out.

III
Without attacking the constitutionality of the No Fault Law in its entirety, Ohio urges that if the No Fault Law is interpreted to compel payment of unlimited medical expenses without guaranteeing it the right to recover the same by way of subrogation and reimbursement, it is being deprived of property wtihout due process of law in violation of the federal constitution.
Although it is difficult to fathom the constitutional argument advanced, it appears that Ohio feels aggrieved because the statute and its interpretation by the court deprives it of a right which existed prior to the adoption of the statute, and that the ultimate result is "unreasonable" or "inequitable."
It is sufficient to observe in this connection that "no person has a vested interest in any rule of law entitling him to insist that it shall remain unchanged for his benefit." New York Central R.R. v. White, 243 U.S. 188, 198, 37 S.Ct. 247, 250, 61 L.Ed. 667 (1916). See also Pinnick v. Cleary, 360 Mass. 1, 271 N.E.2d 592 (Mass. Sup. Jud. Ct. 1971), and Manzanares v. Bell, 214 Kan. 589, 522 P.2d 1291 (Kans. Sup. Ct. 1974), as to constitutionality of no fault laws.
*502 The argument that the subrogation provisions of the No Fault Law of this State, as applied to the fact situation herein, represents an unconstitutional deprivation of property without due process of law is untenable.
Judgment will be entered declaring that Ohio is obligated to pay to plaintiff all reasonable medical expenses as defined in the statute, without limitation as to amount. Ohio does not have a lien for reimbursement of any part of said payment for medical expenses out of plaintiff's tort recovery for pain, suffering or disability of decedent. In the event, however, that plaintiff recovers any sum from the tortfeasor or his insurance carrier which represents incurred medical expenses, she is obligated to reimburse Ohio to the extent of said recovery.
NOTES
[1] If, perchance the choice of law were a relevant issue in this case, the result would also be contrary to the contention of defendant. The case of Buzzone v. Hartford Accident and Indemnity Co., 23 N.J. 447 (1957), is directly on point. Where the applicable law involves the insurance policy and the statutory impact thereon rather than the rights and liabilities flowing from the tort itself, the controlling law is that of the state where the contract was made, except for other considerations which are not present herein. Hence, New Jersey and not New York law would apply and Ohio would nonetheless be liable for all the medical expenses incurred by the assured.