136 N.J. Super. 491 (1975)
347 A.2d 5
PENNSYLVANIA MANUFACTURERS' ASSOCIATION INSURANCE COMPANY, A CORPORATION, PLAINTIFF-RESPONDENT,
v.
GOVERNMENT EMPLOYEES INSURANCE COMPANY (GEICO), A CORPORATION, DEFENDANT-APPELLANT, AND DAVID H. ROMBERGER, DEFENDANT.
Superior Court of New Jersey, Appellate Division.
Argued September 23, 1975.
Decided October 14, 1975.
*495 Before Judges LYNCH, ACKERMAN and LARNER.
Mr. Roy D. Cummins argued for appellant (Mr. C. Kennon Hendrix, on the brief).
Mr. Alan R. Schmoll argued for respondent (Messrs. Capehart & Scatchard, attorneys).
The opinion of the court was delivered by LARNER, J.A.D.
This appeal involves a determination of the subrogation rights of an insurance carrier under the New Jersey Automobile Reparation Reform Act (No Fault Law) (N.J.S.A. 39:6A-9) for personal injury protection payments (PIP) arising out of an accident which occurred during the viable period of the subrogation feature of the statute.
Pursuant to N.J.S.A. 39:6A-4 and the terms of the PIP endorsement on its policy, plaintiff (Pennsylvania) paid in excess of $60,000 for medical expenses incurred by a passenger in the vehicle of its assured, Robert M. Alexander, as a result of an accident with the vehicle of Kenneth T. Stoner. Stoner was covered by a liability policy which also contained a PIP endorsement issued by defendant Government Employees Insurance Company (GEICO). The liability feature of the policy was written with limits of $20,000/$40,000. The basic PIP endorsements of both policies were written in accord with the statutory requirements and provided for payment of all medical expenses to eligible claimants without limitation of amount. See Cirelli v. Ohio Cas. Ins. Co., 133 N.J. Super. 492 (Law Div. 1975).
The injured passenger sustained very severe permanent injuries, with a projected probable recovery against the tortfeasor, GEICO's assured, far in excess of the policy limit of *496 $20,000. Similarly, the subrogation claim of Pennsylvania exceeds the policy limit of GEICO's liability policy and will continue to increase in unpredictable fashion in the future. As a consequence, Pennsylvania instituted this suit for declaratory judgment to determine the extent of its right of subrogation recovery against GEICO and for injunctive relief restraining the settlement by GEICO of the passenger's claim against its assured. Jurisdiction of the controversy was accepted by the trial court on the theory that the issues were not arbitrable under section 9 of the statute.
With the facts undisputed, the trial judge considered the matter on briefs and entered judgment in favor of Pennsylvania, declaring that its right of subrogation against GEICO extended to all PIP payments made to the injured passenger without regard to limits of the liability provision of GEICO's policy. The judge held, in effect, that the statutory PIP endorsement on the tortfeasor's GEICO policy constituted unlimited "additional coverage" over and above the liability limits so as to satisfy the subrogated PIP claim in full.
It should be noted that there are no published opinions in this State dealing with the subrogation rights of insurance carriers under the No Fault Law, except for Cirelli v. Ohio Casualty, supra, decided after the trial court's determination herein. Furthermore, research in other states which have adopted no fault laws has developed no judicial interpretation in aid of the solution of the issue on appeal.
After mature analysis we determine that the trial judge arrived at an erroneous conclusion based upon a misconception of the impact of the PIP provisions of the No Fault Law upon the responsibility of a tortfeasor's insurance carrier for payment of a PIP subrogation claim.
The involvement of GEICO in the claim of the injured passenger or the carrier subrogated to that passenger is measured exclusively by its undertaking within the ambit of the liability feature of the policy which it wrote on behalf *497 of the tortfeasor. Nothing in the no fault law can be construed to expand the liability of GEICO in its capacity as an insurer of the tortfeasor with respect to third-party injury claims.
It is true, of course, that GEICO's policy also included a PIP endorsement pursuant to section 4 of the act. However, that section and the endorsement provide for basic PIP payments to a limited category of claimants. In order for an injured person to make a claim under PIP coverage he must be within one of the following classifications: (1) the named insured and members of the insured's family residing in his household; (2) passengers in the automobile of the insured; (3) operator of insured's automobile with his permission; (4) pedestrians injured by the insured's automobile or by an object propelled from that automobile. N.J.S.A. 39:6A-4.
The injured person as a passenger in the Alexander car covered by Pennsylvania was one of the eligible persons entitled to PIP payments from Pennsylvania. But that person has no eligible status vis-a-vis the Stoner vehicle and therefore would have no PIP claim against GEICO as Stoner's insurance carrier. N.J.S.A. 39:6A-4, upon which the trial judge relied does provide mandatory "additional coverage" beyond the coverage of the standard liability policy, but it does not impose such additional coverage on the carrier of the tortfeasor where the claimant does not have the eligible status vis-a-vis the tortfeasor-insured.
It is evident, therefore, that the injured person herein has no right of action against GEICO for PIP payments because of any provision of the No Fault Law or the PIP endorsement on its policy. Her right of recovery, if any, is circumscribed by the tort liability of GEICO's assured, and her right of satisfaction of a judgment against the assured is circumscribed by the provisions and limitations of the liability feature of GEICO's policy.
If that is so, can the subrogation rights of Pennsylvania rise any higher than those of its subrogor? Under the legal *498 principles applicable to traditional subrogation the subrogee steps into the shoes of the subrogor with no greater rights. Standard Accident Ins. Co. v. Pellecchia, 15 N.J. 162 (1954); Sullivan v. Naiman, 130 N.J.L. 278 (Sup. Ct. 1943).
We find no indication in the No Fault Law evidencing a legislative intent to tamper with the existing law of normal subrogation, except to provide for compulsory arbitration to enforce subrogation and to eliminate all rights to intercompany subrogation by January 1, 1975. N.J.S.A. 39:6A-9. The rights of Pennsylvania are therefore controlled by existing subrogation principles, with the right and quantum of recovery equated with that of the injured person to whom the PIP payments were made. If that injured person were to proceed against the tortfeasor for the incurred medical expenses and succeeded in establishing liability, she would be limited to recovery as against GEICO by the liability coverage of $20,000. Since under the PIP provision of the No Fault Law she is reimbursed on a first-party basis by her host's insurance carrier, she is required to forego her right to recover for these reimbursed expenses and Pennsylvania is subrogated to recover from GEICO in an amount limited by the coverage of the liability feature of its policy.
Although the injured person is unable to recover from the tortfeasor or his carrier the losses paid or collectible under the PIP provision of the No Fault Law (see N.J.S.A. 39:6A-12), she retains her common law cause of action for pain, suffering and disability. Since the injuries involved herein are so severe that it is apparent that her potential recovery far exceeds the limits of the GEICO policy, the next question remaining for resolution involves the respective rights of Pennsylvania and the injured person in the $20,000 fund.
The statutory pattern of the No Fault Law, including the provision that the right of subrogation for PIP payments ends completely on January 1, 1975, reflects the legislative intent to grant a subordinate and temporary role to intercompany *499 subrogation. The major concern of the PIP provision of the no fault legislation was to provide an efficient and inexpensive method by which persons injured in automobile accidents would be reimbursed for out-of-pocket expenses. In addition, the act eliminates recovery for minor injury claims which do not involve the threshold expenditure of $200 for medical attention, and it preserves for normal litigation claims for pain, suffering and disability in the serious cases as defined in N.J.S.A. 39:6A-8. It is manifest that the legislation was adopted for the benefit of the injured victim and the elimination of the cumbersome and uneconomic shifting of dollars from one insurance company to another through the means of subrogation. It has been suggested that the retention of subrogation through the avenue of arbitration for a period of two years was intended solely for the purpose of compiling statistics for the rate-making process. See Iavicoli, No Fault & Comparative Negligence in New Jersey at 117 (1973).
As noted in Cirelli v. Ohio Casualty, supra:
The normal right of subrogation, whether equitable or contractual, is a concept which is foreign to the underlying purpose of the No Fault Law unless the tortfeasor has failed to obtain the coverage required by the act. [133 N.J. Super. at 498]
In harmony with the overall legislative intent derived from the policy and provisions of the No Fault Law, it is our conclusion that the injured victim's recovery for pain and suffering cannot be diminished by any subrogative claim of Pennsylvania arising out of the payment of PIP benefits. If the liability coverage of GEICO is exhausted by satisfaction of the claim of the injured person, not only is GEICO relieved of liability to Pennsylvania but Pennsylvania has no avenue of subrogation recovery in view of the following restriction on subrogation rights in N.J.S.A. 39:6A-9:
* * * Such subrogated insurer may only by intercompany arbitration or by intercompany agreement exercise its subrogation rights *500 against only the insurer of any person liable for such damages in tort provided, however, that such insurer may exercise its subrogation rights directly against any person required to have in effect the coverage required by this act and who failed to have such coverage in effect at the time of the accident. * * *
In connection with the foregoing conclusion it is advisable to consider another fact pattern which may arise by way of intercompany agreement or arbitration relating to a PIP subrogation claim whereby payment is made to the subrogated carrier prior to the disposition of the personal injury claim for pain and suffering. With a limited policy in a substantial injury case such early payment by a liability carrier would reduce the available fund for satisfaction of the injured party's recovery. Under such circumstances who should bear the loss sustained by the individual claimant?
It is fair and equitable to require a liability carrier to be cognizant of its primary obligation to the injured victim. And if it volunteers payment to the subrogated carrier before the resolution of the claim of the injured party, it cannot assert any right to reduce the available coverage for that injury by the amount of the payment. It must absorb the loss caused by its folly.
The foregoing conclusion referable to prior payment by the liability carrier is consistent with the advisory opinion of July 17, 1973 issued to insurance carriers by the New Jersey Commissioner of Insurance. Although this advisory opinion does not have the force of law nor even the presumptive validity of an administrative regulation, nevertheless it serves to demonstrate the practical interpretation placed upon the act by the official having the responsibility to supervise its administration. But cf. New Jersey Mfrs. Cas. Ins. Co. v. Holderman, 54 N.J. Super. 260 (App. Div. 1954).
The trial judge relied upon this advisory opinion and a hypothetical example contained in the Commissioner's press release to reach his conclusion contrary to that expressed herein. We find that his interpretation of the advisory opinion was misplaced in that he added another dimension by *501 increasing the exposure of the liability carrier beyond the limits of the policy  an area which is not encompassed within that opinion. The Commissioner limited his conclusion to the caveat that the injured person cannot be penalized by an invasion of the liability limits of a policy of insurance through payment of a PIP subrogation claim.
In any event, if the Commissioner's opinion was intended to mean that the liability exposure of the tortfeasor's carrier is increased because of the adoption of the No Fault Law, we disagree for the reasons already expressed.
In view of the foregoing, we reverse and remand to the trial court to enter a judgment consistent with this opinion.