138 N.J. Super. 164 (1975)
350 A.2d 307
GEORGE F. ECKMEYER, JR., AND FALMA M. ECKMEYER, HIS WIFE, PLAINTIFFS,
v.
EVERN COLBURN, DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided December 12, 1975.
*166 Mr. Ernest R. Costanzo for plaintiffs.
Mr. John J. Timmons for defendant (Mr. Charles A. Winkelried, attorney).
KING, J.S.C.
On November 11, 1974 plaintiff George F. Eckmeyer, Jr., while operating his automobile on Westfield Avenue, Camden, New Jersey, was struck in the rear by an automobile operated by defendant. After argument on an application for summary judgment by plaintiff the matter was set down for trial on damages, the defendant offering no defense to the issue of liability.
Plaintiff, who claims injury at the time of the accident, was eligible for personal injury protection benefits under an insurance policy issued pursuant to N.J.S.A. 39:6A-1 et seq. and written by Gateway Insurance Company. The carrier has paid the treating physician's final bill of $850 pursuant to its policy, and certain income continuation benefits.
The injured plaintiff, who has collected PIP benefits from his own insurance company, now petitions this court for a ruling allowing him to recover those same items against the defendant tortfeasor. The court scheduled this issue for hearing in advance of trial.
"No fault" benefits for individuals sustaining bodily injuries as a result of an automobile accident are referred to in the New Jersey Automobile Reparation Reform Act as personal injury protection benefits. N.J.S.A. 39:6A-4. That section of the act provides the following benefits: (a) *167 medical expenses, (b) income continuation; (c) essential services, (d) survivor benefits; (e) funeral expenses. These benefits are payable by the insurance company, without regard to negligence, directly to the named insured. N.J.S.A. 39:6A-4.
Once the insurer makes such payments to its injured policyholder, it is necessary to look at N.J.S.A. 39:6A-9 to determine whether the injured policyholder can recover the losses paid or collectible under the PIP provision from the tortfeasor. N.J.S.A. 39:6A-9 provides:
Any insurer paying benefits in accordance with the provisions of section 4 and section 10, personal injury protection coverage, regardless of fault, shall be subrogated to the rights of any party to whom it makes such payments, to the extent of such payments. Such subrogated insurer may only by intercompany arbitration or by intercompany agreement exercise its subrogation rights against only the insurer of any person liable for such damages in tort provided, however, that such insurer may exercise its subrogation rights directly against any person required to have in effect the coverage required by this act and who failed to have such coverage in effect at the time of the accident. The exemption from tort liability provided in section 8 does not apply to the insurers' subrogation rights. On and after 2 years from the effective date of this act the provisions of this section shall be inoperative.
The above statute, by operation of law (i.e., it is not necessary that the policy contain a subrogation provision), creates a subrogation right in the insurer who pays the PIP benefits. As such, the insurance company steps into the shoes of its assured, to whom it made such payments. The effect of this section of the No-Fault Law has not been interpreted by any New Jersey court. Mario Iavicoli, the principal draftsman of the bill. In his No Fault and Comparative Negligence in New Jersey he states that
An injured person legally permitted to institute a tort action for damages as a result of bodily injuries he sustained is precluded from maintaining a claim in such an action for any losses which were satisfied by personal injury protection benefits. The right of recovery for those losses satisfied by personal injury protection *168 benefits are transferred by operation of law to the insurer making personal injury protection benefit payments. Only such subrogated insurer is permitted to recover the benefits paid as a result of such losses. [at 116]
The injured assured is reimbursed for his expenses on a first party basis by his insurance carrier. By so doing he gives up his right to recover these expenses from the tortfeasor. The right to recover the losses satisfied by the insurer is in the insurer by virtue of N.J.S.A. 39:6A-9.
This interpretation is consistent with the evidential exclusionary rule found in N.J.S.A. 39:6A-12 which states:
Evidence of the amounts collectible or paid pursuant to sections 4 and 10 of this act to an injured person is inadmissible in a civil action for recovery of damages for bodily injury by such injured person.
Clearly this statute means that evidence of the damage items included in PIP payments is not admissible in the action brought by the injured insured against a tortfeasor. Iavicoli states:
Losses which do not entitle one to personal injury protection benefits may be introduced into evidence. Lost wages, essential services expenses and funeral expenses which exceed personal injury protection coverage are not subject to the exclusionary evidential rule, and, therefore, are admissible in evidence. [at 90]
In addition to being able to recover those expenses which exceed the policyholder's coverage, Judge Larner in Cirelli v. Ohio Casualty Ins. Co., 133 N.J. Super. 492, 499 (1975), found that the subrogation provision of the statute limited plaintiff's right of recovery to the "pain, suffering and disability of the decedent for the period of survival." See also Pennsylvania Mfrs. Ass'n. Ins. Co. v. Government Employees Ins. Co., 136 N.J. Super. 491 (App. Div. 1975) (Decided 10/14/75).
*169 In summary the subrogation section of the statute prevents double recovery. Plaintiff may only recover for pain and suffering together with those benefits (expenses) not covered by his PIP provision.
Plainitff's second argument is that the subrogation rights of the paying carrier terminated on June 19, 1974 (before the November 11, 1974 date of accident involved in this case), and with that termination plaintiff's right to recover expenses formerly covered by the PIP provision of the policy is revived. Plaintiff finds support for this argument in the final line of N.J.S.A. 39:6A-9, which states:
On and after 2 years from the effective date of this act the provisions of this section shall be inoperative.
The Historical Note under N.J.S.A. 39:6A-1 provides:
Section 19 of L. 1972, c. 70, approved June 20, 1972, provided: "This act shall take effect immediately and the required compulsory insurance, personal injury protection coverage benefits, and tort exemption provisions shall be mandatory on and after January 1, 1973".
From these two sections of the act it is unclear whether the right of subrogation for PIP payments ends on June 19, 1974 or January 1, 1975. What is clear is that the retention of subrogation through the avenue of arbitration for a two-year period was intended solely for the purpose of compiling statistics for the rate-making process and not for the purpose of reviving plaintiff's cause of action. Iavicoli, in his book, op. cit., says:
The subrogation provisions of the Act are needed for a period of time in order to compile statistics for the rate making process. Therefore, the originally introduced assembly bill was amended to provide that two years after the effective date of the Act, the subrogation provisions of the Act shall become inoperative. The termination of the subrogation provisions should not be misconstrued as intending to allow injured persons the right to institute actions for losses satisfied by personal injury protection benefits. Although the Inadmissibility of Evidence provision of the Act would militate *170 against such a misconstruction, it may be well advised if a future amendment to the Act would provide language to insure against such a misconstruction. [at 117]
It would make no difference whether the subrogation provision terminated on June 19, 1974 or January 1, 1975. In either case, the injured policyholder would recover PIP benefits from his insurance company. With the subrogation section, the insurance company paying those benefits could recover from the tortfeasor's insurance company by intercompany agreement or arbitration. Without the provision, the company would cover their losses through adjusted rates, computed for this purpose during the two-year period mentioned in the statute. The Legislature clearly did not intend to permit plaintiff to recover personal injury protection benefits a second time in a tort action. The court will not permit proof at trial of any alleged damages already paid by or collectible from plaintiff's own insurance carrier under the PIP coverage. An appropriate order should be submitted.