148 N.J. Super. 363 (1977)
372 A.2d 677
ROBERT A. MARRINER AND FRANKLIN J. MARRINER, GENERAL ADMINISTRATORS OF THE ESTATE OF WILLIAM E. MARRINER, DECEASED, PLAINTIFFS,
v.
ROBERT S. KOENIG AND PENNSYLVANIA READING SEASHORE LINES, DEFENDANTS.
Superior Court of New Jersey, Law Division (Civil).
Decided March 14, 1977.
Mr. William Bruce for plaintiffs (Messrs. Cole, Koury, Cole & Tighe, attorneys).
Mr. Joseph Youngblood for defendants (Lloyd, Megargee, Steedle & Connor, attorneys).
*364 STALLER, J.C.C., Temporarily Assigned.
Motion for summary judgment was made by defendants Robert A. Koenig and Pennsylvania Reading Seashore Lines against plaintiffs Robert A. Marriner and Franklin J. Marriner, administrators of the estate of the deceased William A. Marriner. Suit was brought on behalf of the estate by its subrogee, Liberty Mutual Insurance Company, for recovery of personal injury protection (PIP) benefits paid for decedent totalling $25,421.60. Payments were made as a result of the ultimately fatal collision on June 26, 1974 between decedent's car and a Pennsylvania Reading train operated by defendant Koenig. The motion, based on the application of the subrogation provision of the New Jersey Automobile Reparation Reform Act, N.J.S.A. 39:6A-9, must be denied.
New Jersey's Automobile Reparation Reform Act, commonly known as "No Fault," applies only to private passenger automobiles. It is compulsory and requires the owners of such automobiles to maintain first party coverage, payable regardless of fault, for themselves and others named in their policies and as designated in N.J.S.A. 39:6A-2 and N.J.S.A. 39:6A-4. See Government Employees Ins. Co. v. Tolhurst, 146 N.J. Super. 285 (App. Div. 1977); Hoglin v. Nationwide Mut. Ins. Co., 144 N.J. Super. 475, 480 (App. Div. 1976); Bingham v. Home Indem. Co., 146 N.J. Super. 166 (Law Div. 1976); 27 Rutgers L. Rev. 127, 128 (1973). Since the accident that resulted in decedent's fatal injuries involved a private passenger automobile, as required by N.J.S.A. 39:6A-4, as well as a train, he was entitled to the PIP benefits awarded him under his policy. Tolhurst, supra, 146 N.J. Super. at 289; Hoglin, supra, 144 N.J. Super. at 481; Bingham, 146 N.J. Super. at 168; Harlan v. Fidelity & Casualty Co., 139 N.J. Super. 226, 228-229 (Law Div. 1976). It does not necessarily follow, however, that because PIP benefits are mandatory as a result of N.J.S.A. 39:6A-4 that N.J.S.A. 39:6A-9 applies as well.
The subrogation provision specifically provided for inter-company arbitration of subrogation claims by insurers for a *365 period that ended on January 1, 1975. Eckmeyer, Jr. v. Colburn, 138 N.J. Super. 164, 169 (Law Div. 1975); Cirelli v. Ohio Cas. Ins. Co., 133 N.J. Super. 492, 498 (Law Div. 1975). The intent of the statute was to terminate the right of subrogation as of that date. Pa. Mfrs'. Ass'n Ins. Co. v. Government Employees Ins. Co., 136 N.J. Super. 491, 499 (App. Div. 1975); Cirelli, supra, 133 N.J. Super. at 498; Iavicoli, No Fault and Comparative Negligence in New Jersey, at 115-117 (1973). The public policy behind the No Fault Act indicates that N.J.S.A. 39:6A-9 affects the pre-existing right of subrogation only as between the insurers of private passenger automobiles and such other motor vehicles included in the statute's definition of "automobiles," N.J.S.A. 39:6A-2(a).
The remedial effect of No Fault has its principal impact on the insurers of such private passenger automobiles and their policy holders. Pa. Mfrs'., supra, 136 N.J. Super at 499; See State of New Jersey Automobile Ins. Study Commission, "Reparation Reform for New Jersey Motorists," at 155-58 (1971). By virtue of its direct payment plan and sections such as the tort exemption found in N.J.S.A. 39:6A-8, the costs of providing insurance is hopefully to be reduced, while the quality of coverage is hopefully to be improved. The cost theory inherent in No Fault envisions a parity of losses between insurance companies. "Reparation Reform for New Jersey Motorists," at 30-37. For this reason the statutory scheme included the termination of the "cumbersome and uneconomic" shifting of dollars between insurance companies as a result of subrogation claims. Pa. Mfrs.', supra, 136 N.J. Super. at 499; Cirelli, supra, 133 N.J. Super. at 498. Direct payment of PIP benefits, with no additional claims allowed based on the losses covered by PIP payments, obviously short-circuits many of the costs of litigation eventually paid for by the consumer in higher rates. But when, as here, a self-insured commercial railroad company is involved, that important parity of losses between insurers no longer exists. The coverage provided for in this class of injuries, unrecovered *366 by insurers would result in higher costs to the companies making such PIP payments. The higher costs could and probably would, in turn, result in factors weighing towards higher rates to consumers, thereby defeating the intent of No Fault. The application of the subrogation provision in a situation as exists here would violate N.J.S.A. 39:6A-16, which calls for a liberal construction of the No Fault Act in order to effectuate its goals. The purpose of the Act is to cut down costs to consumers while providing improved coverage, and that purpose is best served by allowing recovery by insurers where the shifting of dollars through subrogation would be economic for both the companies and assureds.
Therefore, N.J.S.A. 39:6A-9 does not apply here, where an accident occurred between decedent's private automobile and a Pennsylvania Reading train. The motion for summary judgment is denied.
Submit order.