Ralph KAUP, Plaintiff,

v.

The WESTERN CASUALTY & SURETY COMPANY, a Kansas Insurance Corporation, Defendant.

Arvin POST, Plaintiff,

v.

The WESTERN CASUALTY & SURETY COMPANY, a Kansas Insurance Corporation, Defendant.

Nos. CV–75–42–BLG and CV–75–43–BLG.

United States District Court, D. Montana, Billings Division.

May 20, 1977.

John A. Hauf, Hauf & Forsythe, Billings, Mont., for plaintiff.

Rockwood Brown, Anderson, Symmes, Forbes, Peete & Brown, Billings, Mont., for defendant.

## OPINION AND ORDER

BATTIN, District Judge.

The facts in these cases are identical and they arise from an accident in which both plaintiffs were involved. Bill Lentsch was the owner of the 1964 Chevrolet pickup involved in the accident wherein the plaintiffs sustained their injuries. In February of 1974, Lentsch was working in Kansas. He obtained an automobile insurance policy from Western Casualty & Surety Company, which covered the period from February 13, 1974, to February 13, 1975. A personal injury protection endorsement, which provided coverage as required by the Kansas No-Fault Insurance Laws, was added to the policy. After obtaining the insurance policy, Lentsch moved to Montana. On March 27, 1974, Lentsch was driving his pickup and had as passengers the plaintiffs, Ralph Kaup and Arvin Post. The pickup left the highway outside of Rosebud, Montana, and caused serious injuries to both plaintiffs. The plaintiffs, in separate actions, filed suit in this Court. Each asserted a claim against Bill Lentsch for damages resulting from personal injuries stemming from Lentsch's negligence. Each also asserted a second claim against the Western Casualty & Surety Company for medical expenses,

rehabilitation expenses, essential services expenses and work loss, in the amount of $16,180. The second claim was asserted under the No-Fault endorsement. of Lentsch's insurance policy.

The liability limits of the insurance policy are $25,000 for each person, and $50,000 for each occurrence. Western Casualty & Surety Company paid Post and Kaup each $25,000. Thereafter, pursuant to a stipulation of the parties, the complaints of the respective plaintiffs were dismissed with prejudice as to all defendants, except that the No-Fault claim against Western Casualty & Surety Company was not dismissed. The claim for No-Fault benefits was argued to the Court and the issue has been fully briefed. The plaintiffs have also requested leave to file amended complaints.

The original Kansas No-Fault Insurance Plan was enacted by the Kansas Laws of 1973, Chapter 198. The effective date of that No-Fault plan was January 1, 1974. The No-Fault plan was amended by the Kansas Laws of 1974, Chapter 193; the amended laws became effective February 22, 1974. The original No-Fault Act was in effect from January of 1974 through February 22, 1974. On February 13, 1974, the insurance policy in question in this lawsuit was issued.

The defendant insurance company claims that the No-Fault plan enacted in 1973 and effective from January of 1974 to February 22, 1974, is the controlling law in this case and as such is the law under which the insurance contract must be interpreted. Section 13 of the No-Fault Act relied on by the defendant provided that:

"An insurer's . . . rights of reimbursement and indemnity shall be as follows:

"(a) No subtraction from personal injury protection benefits shall be made because of the value of a claim in [court] based on the same bodily injury, but after recovery of damages by judgment, settlement or otherwise is realized upon any such court claim, a subtraction shall be made to the extent of the recovery, less reasonable attorney's fees and other rea-

sonable expenses incurred in effecting the recovery, *but only to the extent that the injured person has recovered damages from the tortfeasor or his insurer or insurers.*" (Emphasis supplied.) Kansas Laws of 1973, Chapter 198, Section 13, effective January 1, 1974.

The language of Section 13(a) is identical to Section III, Paragraph XII(d)(1) of "Conditions" of the No-Fault endorsement.

The language of the amended Act on this subject, which became effective nine days after the issuance of the insurance policy involved in this litigation, contains the following different language in the corresponding section of the Kansas Laws of 1974:

" . . . but only to the extent that the injured person has recovered damages from the tortfeasor or his insurer or his insurers *which are duplicative of personal injury protection benefits payable.*" (Emphasis supplied.) Section 40–3113, General Statutes of Kansas (1974).

The distinction between the two Kansas No-Fault Acts is the catalyst for the controversy in this case. The 1973 No-Fault Act, which was in force and effect at the time this policy was issued, allowed the insurer to obtain reimbursement, or to subtract from the amount payable to a claimant, to the extent that the injured person had recovered any damages from the tortfeasor or his insurer. However, the amended No-Fault Act, which went into effect after this policy was issued, limited the insurer's reimbursement, or subtraction, to damages which were recovered that are duplicative of the personal injury protection benefits payable. Thus, if the original Kansas No-Fault Law controls in this case, Western Casualty would be entitled to a subtraction of medical benefits payable from the amount already paid to the plaintiffs under the liability benefits of the insurance policy. The medical benefits owing would then have to exceed $25,000 before the insurance company would be liable to plaintiffs for further payment. Even so, if the defendant's theory of this case and the controlling law is accepted, defendant would not be

obligated to pay anything more to these plaintiffs because the company has already paid the maximum $50,000 payment for each occurrence.

On the other hand, if the plaintiffs are correct in their claim that the amended law controls, they would be entitled to recover for special damages incurred. Under this theory, the plaintiffs could recover for all special damages which are not duplicative of any payment previously made by Western Casualty. Significantly, from the plaintiffs' perspective, the No-Fault endorsement of this insurance contract provides, in Section II(e), that terms of the policy which are in conflict with the Kansas Automobile Injury Reparations Act "are hereby amended to conform to such law." The plaintiffs' position is that this provision of the contract negates the defendant's claim that the original Kansas No-Fault Act controls. The defendants argue that the provision refers only to the law in effect at the time of the issuance of the policy and is designed solely to conform the contract with the law which was in effect when the contract was issued: the original Kansas No-Fault Act.

The issue in this case is whether the plaintiffs are entitled to recover for special damages incurred as a result of the insured's negligence under the No-Fault endorsement, or whether the defendants have satisfied their obligation under the insurance contract by payment of the full liability amounts under the insurance contract.

■ There is a presumption that by enacting a statute a legislature intends to effect some change in existing law. 82 C.J.S. Statutes § 316, p. 545 (1953). Thus, when the Kansas Legislature enacted the first no-fault automobile insurance statute in Kansas, there was a presumption that the Legislature, at least partially, intended to replace the traditional common-law principles of tort liability. The principal object of no-fault insurance is to compensate accident victims without imposing on such victims the delay necessitated by a legal determination of fault. The most important provision in attaining this goal is the concept of first-party protection. Under this con-

cept, a party injured in an automobile accident is compensated for special damages directly by his own insurance company, regardless of legal fault. The person receiving first-party benefits is not precluded from maintaining an action against a negligent tortfeasor for general damages if the injured person has incurred medical expenses in excess of the stated statutory amount or has sustained a specified type of injury. The Kansas Laws, Chapter 193 of the Laws of Kansas, 1973, effectuated a shift, at least partially, in the assignment of fault and compensation for damages in the State of Kansas. Thus, it is necessary to consider what the effective law was pertaining to the Kansas No-Fault statutes when this accident occurred.

When the insurance contract in this case was purchased and became effective, the Kansas No-Fault Law provided that an insurer was entitled to a setoff to the extent that the injured person had recovered damages from the tortfeasor or his insurer or insurers. Laws of Kansas, Chapter 193, Section 13(a), 1973. Had that statute been in effect without amendment at the time of this claim, then the defendant would be entitled to the setoff against the special damages sought to be recovered. However, the original law was amended. As the Kansas Supreme Court stated in *Shapiro v. Kansas Public Employees Retirement System*, 211 Kan. 452, 507 P.2d 281 (1973):

"Any changes and additions made in existing legislation raise a presumption that a change in meaning and effect is intended." *Shapiro v. Kansas Public Employees Retirement System*, 507 P.2d at 285.

When the Legislature of the State of Kansas enacted Kansas Laws, Chapter 198, 1974, a significant change in former Section 13(a) of Chapter 193, Laws of Kansas, 1973, was made. The change limited the right to a setoff by insurance companies to those instances where the payments are duplicative of the personal injury protection benefits payable. Western Casualty's Surety Company argues that the amendment cannot be made to retroactively apply to this

insurance contract because the parties entered the contract prior to the time the Act was amended. A Montana case, *Styles v. Byrne*, 89 Mont. 243, 296 P. 577 (1931), is cited in support of this proposition. In the *Byrne* case, the Montana Supreme Court was construing a life insurance policy. It was contended that a Colorado law enacted after issuance of the policy by a Colorado insurance company should control the coverage provisions of the policy. In rejecting this, the Montana Court said that subsequent change in the law does not apply and the insurance contract must be construed with reference to the law existing when it was executed. The Court went on to say that statutes are generally construed prospectively and that retroactive laws are not regarded with favor. Despite the Montana authority, in the case of *Jones v. Garrett*, 192 Kan. 109, 386 P.2d 194 (1963), the Kansas Court refined somewhat the general proposition set forth in *Byrne*. The *Jones* case involved an action against a former Kansas resident. An automobile accident had occurred and the former resident had left the state of Kansas. At the time, Kansas's long arm provision did not allow for suits against non-residents stemming from auto accidents which had occurred within the state of Kansas. After the defendant had left the state of Kansas, but before the statute of limitations had run, the Kansas law and statute were amended to allow service of process on non-residents involved in accidents in the state of Kansas. In construing the effect of this amendment, the Kansas Court stated:

"While generally statutes will not be construed to give them retroactive application unless it appears that such was the legislative intent, nevertheless when a change of law merely affects the remedy or law of procedure, all rights of action will be enforced under the new procedure without regard to whether they accrued before or after such change of law and without regard to whether or not the suit has been instituted unless there is a saving clause as to existing litigation." *Jones v. Garrett, supra* at 199.

An amendment to a previously existing statute is ordinarily construed as if the original statute had been repealed and a new and independent Act in the amended form had been adopted in its place. Lawsuits commenced after the amendment are generally considered as if the statute had been originally enacted in its amended form. Finally,

"When a statute is revised, some part being omitted, the omitted parts are not readily to be supplied by construction, but are ordinarily considered as annulled." *State ex rel. Osborn v. Richardson*, 174 Kan. 382, 256 P.2d 135, 139 (1953).

The *Osborn* case involved two school districts attempting jointly to construct a school. The Kansas statutes in effect in 1949 prohibited the joint action of separate school districts in the construction of new schools. When a different Act was adopted by the Kansas Legislature in 1951, such activities were not prohibited. The *Osborn* Court concluded that the omission could not be revived by construction.

In this case, although the insurance contract was entered into prior to the amendment of the Kansas No-Fault Act, the accident and the lawsuits resulting therefrom did not occur until after the 1974 Act was effective. The amendment deals specifically with the procedural remedies available to an injured party as well as the revision by omission of parts of the original statute. The chronology of the enactment of the No-Fault statute in Kansas, the purchase of the insurance contract, the subsequent amendment of the No-Fault Act, and the accident and ensuing lawsuits, considered in light of the previously mentioned principles of law recognized by the Kansas Court, commands the conclusion that the No-Fault law controlling in this case is that of the amended Act effective February 22, 1974. This position is further enhanced by the provision of the contract which conforms the terms of the insurance policy to the provisions of the Kansas Automobile Injuries Reparations Act when the terms of the policy are in conflict with the laws of Kansas.

Despite the ruling of the Montana Supreme Court in the *Styles v. Byrne* case, *supra*, it would be anomalous in this instance to find that Section 13(a) of the Laws of Kansas, 1973, Chapter 193, is the controlling statute and that therefore the defendant is entitled to set off the damages paid under its liability obligation against the medical benefits claimed by the plaintiffs.

The issue which must next be resolved is whether the payments paid under the liability provisions of the insurance contract are duplicative of the personal injury protection benefits payable under the first-party insurance rider of the insurance contract. If they are, then the defendant is still entitled to a setoff. If not, plaintiffs are entitled to recover their special damages.

All no-fault plans make a distinction between first party benefits and benefits recovered on the basis of fault. The intent of the first-party no-fault benefit is to make the insurer obligated to pay the first-party benefit as soon as the loss accrues. The first-party benefits under this insurance contract are payable only to eligible injured persons. By the terms of the contract, that includes:

"Any other person who sustains bodily injury while occupying the injured motor vehicle . . . ." Insurance Contract, Section I, Definitions (2).

The Kansas Supreme Court has construed the language of 40–3113(a) K.S.A. as being designed to prevent duplicative recovery. *Manzanares v. Bell*, 214 Kan. 589, 522 P.2d 1291, 1313 (1974).

The New Jersey Supreme Court considered a similar question in the case of *Cirelli v. Ohio Casualty Insurance Co.*, 133 N.J.Super. 492, 337 A.2d 405 (1975). The issue in *Cirelli* was whether the insurer could be reimbursed for the medical expenses paid as personal injury protection benefits to the decedent out of the recovery that the claimant might obtain for pain and suffering and wrongful death under the liability portion of the insurance contract. The reimbursement clause of the insurance contract in question gave the insurer a lien for the amount of personal injury protection benefits on the proceeds of any recovery against the person responsible for the injury. The *Cirelli* Court held that the policy provision granting full reimbursement to the company was not enforceable so as to reduce the recovery potential of the assured against the tortfeasor. The Court found that:

"In the event that plaintiff, because of the institution of suit in another jurisdiction whose statute does not preclude evidence of medical expenses, succeeds in recovering all or part of the medical expenses paid by Ohio, equitable principles dictate that such recovery be reimbursed to Ohio. In this manner, the avoidance of double recovery inhibited by the New Jersey No Fault Law will be carried out." *Cirelli v. Ohio Casualty Insurance Co.*, 133 N.J.Super. 492, 337 A.2d at 410 (1975).

The principle set forth in *Cirelli* was adopted in *Pennsylvania Manufacturers Association Insurance Co. v. Government Employees Insurance Co. (GEICO)*, 136 N.J.Super. 491, 347 A.2d 5 (1975). In that case, the insurer of the driver whose passenger was injured had paid personal injury protection benefits to the passenger. The insurer then sought to be subrogated to the passenger's rights against the negligent driver of the other car. The amount the passenger could recover in general damages against the tortfeasor was measured by the limits of the tortfeasor's liability insurance policy. Apparently the injuries of the passenger were so severe that her potential recovery far exceeded the limits of the policy. In these circumstances, the New Jersey Court found that if the liability coverage was exhausted by satisfaction of the injured party's claim, there was no room for subrogation because far from having a double recovery the injured party's claim was not even paid in full once. The insurer could not further diminish the insufficient claim by subrogating part of it to the personal injury benefits paid under the first-party insurance. In each of these cases, the New Jersey No-Fault provisions are different from the Kansas No-Fault provisions. However, the principle involved is the same.

■ The windfalls available to an injured party are limited on the same principle that precludes the insurer from reaping a benefit at the expense of an injured party. If an injured party recovers medical expenses in a court action, then he must repay the personal injury benefits already received on the first-party insurance. This principle is illustrated by the case of *Schuldt v. State Farm Mutual Automobile Insurance Co.*, 238 N.W.2d 270 (S.D.1975). In that case, the plaintiff had recovered an amount representing medical benefits in an action brought for injuries to his daughter. The South Dakota Court upheld the insurance company's claim for subrogation, stating that insurance was indemnity for loss and that there could be no recovery for an amount greater than the loss sustained.

"A contract of indemnity, at least in the context of insurance law, means that an injured person is to recover on his loss 'commensurate with the loss sustained.' It seems clear that the legislature meant just that when it enacted this section—it meant that the supplemental medical insurance policy should assure that the injured party recovers 'commensurate with the loss'. See also 43 Am.Jur.2d, *Insurance*, § 1.

"This being the case, we find nothing objectionable about allowing an insurer contractual subrogation in the case of medical benefits. Subrogation operates only when a party recovers twice for injuries sustained in an aggregate amount *greater than* the actual injury." *Schuldt v. State Farm Mutual Automobile Insurance Co.*, supra at 273. (Emphasis in original.)

It is inconceivable that the amounts claimed under the first-party insurance in this case are duplicative of the amounts paid under the liability provisions of the insurance contract. The injuries resulting from the operative facts of this case have permanently paralyzed two young men. The amount they have recovered under the liability portions of the insurance contract is $25,000 apiece. They have claimed an additional sum of $16,180 against the Western Casualty & Surety Company for the

medical expenses, rehabilitation expenses, essential services expenses, and work loss. It is unlikely that if they each were permitted to recover the amount claimed they would recover to the extent that they have been injured.

Furthermore, in this case there is an insurer, which entered into a contract with its insured. The insured paid an amount of money for liability protection. He has reaped the benefits of that payment and contract by virtue of the insurance company's liability payments in this case. The insured also paid an amount for the insurance as required by Kansas law for no-fault protection. Neither he nor the plaintiffs have reaped the benefits of those payments. The class of persons the Legislature sought to protect by the Kansas No-Fault Act have not been protected in this instance because of the position taken by the insurer. The protections for the insurer, set forth in § 40–3113, K.S.A., arise only if the insured, or persons eligible to collect under the insurance, recover to the full extent of the injury. That has not occurred in this case, so the insurer's position is not well taken.

The Kansas No-Fault Act of 1974, the amended Act, is the controlling statutory law in this case. Furthermore, the provision of the insurance contract itself brings the claims in this instance under the penumbra of that legislation. The plaintiffs are entitled to the $16,180 claimed by each plaintiff for medical expenses, rehabilitation expenses, essential services expenses, and work loss as claimed in their second claims for relief.

■ With regard to this, the plaintiffs have filed a motion for leave to amend their complaints, namely paragraph 5 of the Second Claim, requesting the additional sum of 18% interest on the benefits owing, together with the sum of $5,000 to be awarded as reasonable attorney's fees. Allowing the amendment is a matter within the Court's discretion. This is especially so because the matter was submitted to the Court without trial. The defendant would not be substantially prejudiced by allowing

amendment in this case. However, the 18% interest prayed for should not be allowed for the time that this motion has been under advisement in this Court, which is now over one year.

The defendant claims that the only possible allowance in the no-fault endorsement to which plaintiffs are entitled is the $2,000 medical expense benefit. This argument is based upon the complaint which was filed. The defendant's position is that in the complaint, specifically the Second Claim, the plaintiffs fail to assert a basis on which anything other than the medical expenses could be awarded. To this end, the argument is extended to say that the prayer for relief is the only place in which the plaintiffs have claimed their entitlement to anything other than medical expenses and that therefore they are not entitled under the statute to anything but the medical expenses. By allowing the amended complaint, this contention is rendered moot. Even if the amended complaint were disallowed, the plaintiffs would still be entitled to recover the full extent claimed because of their request for "such other and further relief as to the Court may seem just and proper".

There is no motion before the Court, such as a motion for summary judgment or a motion to dismiss, but the issue has been submitted to the Court on the briefs. There are no issues of material fact, so the case will be treated as one in which cross motions for summary judgment have been filed. Therefore,

IT IS ORDERED that the plaintiffs' motions for leave to file amended complaints be, and the same hereby are, granted.

IT IS FURTHER ORDERED that the defendant's motions for summary judgment be, and the same hereby are, denied.

IT IS FURTHER ORDERED that the plaintiffs' motions for summary judgment be, and the same hereby are, granted. The plaintiffs are each entitled to a judgment in the amount of Sixteen Thousand One Hundred Eighty Dollars ($16,180.00) for medical expenses, rehabilitation expenses, essential services expenses, and for work loss as

claimed in the amended complaint in the Second Claim for relief. The plaintiffs are further entitled to interest on this amount, pursuant to § 40–3110, K.S.A., at the rate of eighteen percent (18%) simple interest per annum, for the period between the date thirty (30) days after the claim was made and May 4, 1976. There is no interest due and owing for the period in which the matter was under advisement by the Court.

The Clerk is directed to enter final judgment granting the plaintiffs relief in accordance with this Opinion and Order. The Clerk is further directed to notify the parties of the entry of this Order.