**JOSEPH BANCROFT & SONS COMPANY, Plaintiff,**

v.

**M. LOWENSTEIN & SONS, INC., Defendant.**

**Civ. A. No. 3581.**

United States District Court, D. Delaware.

July 29, 1970.

See also D.C., 303 F.Supp. 315.

James M. Tunnell, Jr., and Walter L. Pepperman, II, of Morris, Nichols, Arsht & Tunnell, Wilmington, Del., John A. Reilly, Kenneth E. Madsen, and Arthur D. Gray, of Kenyon, Kenyon Reilly, Carr & Chapin, New York City, of counsel, for plaintiff.

C. Walter Mortenson, of Mortenson & Weigel, Wilmington, Del., Robert B. Frailey and Stuart S. Bowie, of Paul & Paul, Philadelphia, Pa., Bernard R. Rapoport and Howard Schwartzberg, of M. Lowenstein & Sons, Inc., New York City, of counsel, for defendant.

## OPINION

CALEB M. WRIGHT, Chief Judge.

This action began in the Court of Chancery of the State of Delaware. Plaintiff by its complaint there sought an accounting for royalties allegedly due under an agreement licensing use of certain patents and a trademark and an injunction compelling defendant to make the necessary records and facilities available for inspection to determine the amounts due. Defendant removed the action to this Court under 28 U.S.C. § 1441. Plaintiff is a citizen of the State of Delaware and defendant is a citizen of the State of New York. The amount in controversy exceeds $10,000.

After removal, defendant was permitted to amend its answer and counterclaim previously filed, and to substitute four counterclaims for the single counterclaim. 303 F.Supp. 310 (D.Del. 1969). The four counterclaims sought damages for violation of the antitrust laws, for breach of contract, and restitution of royalties paid pursuant to allegedly illegal agreements. They were directed not only to the agreement upon which plaintiff had brought suit, but also to numerous other agreements by which companies now merged into defendant were licensed to use patents, technical information, and trademarks belonging to the plaintiff.[1] Plaintiff replied to the counterclaims in due course and asserted affirmative defenses.

On February 2, 1970, defendant moved to amend its counterclaims. By agreement of the parties and leave of Court, amendments to counterclaims three and four were made on February 12, 1970. On February 16, 1970, plaintiff replied to the amended counterclaims and asserted three counterclaims of its own in the reply. Defendant has moved to dismiss or strike plaintiff's counterclaims.

Plaintiff's first counterclaim charges defendant with infringement of United States Patent No. 2,876,136 (the "PVA patent").[2] The second counterclaim seeks

1. The complaint seeks royalties due under an agreement dated October 6, 1949, with Rock Hill Printing & Finishing Company, whose obligations defendant assumed as a result of merger. Defendant's counterclaims are based on an agreement with Rock Hill dated October 11, 1944, replaced by a three-part agreement dated January 2, 1958; the October 6, 1949 agreement; and agreements dated September 3, 1957, with Lyman Printing and Finishing Company, now also merged into defendant.

2. The complaint asserts that the PVA patent was licensed to defendant pursuant to paragraph 3 of the 1949 agreement, which provided for the inclusion of related "improvements" in the original agreement as such improvements were reduced to practice by plaintiff. Plaintiff's first counterclaim apparently results from defendant's denial that it was li-

royalties due and withheld under the agreements upon which defendant has counterclaimed for royalties wrongfully paid. It asserts that plaintiff was entitled to more royalties than defendant paid under the agreements and that defendant concealed the underpayment. Plaintiff's third counterclaim proceeds on an unjust enrichment or quasi-contract theory. It claims that Rock Hill Printing & Finishing Company, now merged into defendant, induced plaintiff to make available the subject matter of certain patent applications and later of the PVA patent and United States Patent No. 2,899,263 (the "R-1 patent") with the understanding that disclosure was pursuant to licensing agreements.[3] Plaintiff argues that defendant is estopped by its receipt and use of that subject matter to deny an obligation to pay.

■ Defendant first asserts that plaintiff's counterclaims are improper because not contemplated by the Federal Rules of Civil Procedure. That a plaintiff may counterclaim in his reply is established both in the case law and the texts, however. Warren v. Indian Refining Co., 30 F.Supp. 281 (N.D.Ind. 1939); Bethlehem Fabricators, Inc. v. John Bowen Co. 1 F.R.D. 274, 275 (D. Mass. 1940); Mid-States Products Co. v. Commodity Credit Corp., 10 F.R.D. 592 (E.D. Ill. 1949); 5 Wright & Miller, Federal Practice and Procedure, § 1188, pp. 25–27, (1969); 3 Moore, Federal Practice, §§ 13.05, 13.08, esp. pp. 22–23 (1968).

Rule 13 is not limited by its terms to counterclaims only in the answer, and speaks simply of claims which "the pleader" has against the opposing party. The fact that Rule 7 does not specifically provide for a counterclaim in the reply is not persuasive. It purports only to identify permissible pleadings by their generic names. 5 Wright & Miller,

§ 1187, p. 24 (1969). Nor does the 1966 amendment to Rule 18, eliminating the reference to a counterclaim in the reply impair plaintiff's right to assert such a counterclaim. The amendment intended to broaden, not narrow the scope of the rule. See Advisory Committee Note to Proposed Rule 18, 39 F.R.D. at 86, 5 Wright & Miller, § 1188, pp. 25–27.

■ The right of either plaintiff or defendant to plead counterclaims is not absolute, however. Rule 13(f) requires a party who fails to set up his counterclaims within the time permitted for his responsive pleading to secure leave of court. The question now presented is whether plaintiff's failure to plead his counterclaims in his reply to defendant's four counterclaims when they entered the case forces the present controversy into the confines of Rule 13(f).

Defendant's position is that plaintiff's counterclaims, not having been pleaded when the opportunity was first available to do so of right, are "omitted counterclaims" requiring leave of court. The right to plead counterclaims once lost, continues the argument, cannot be resurrected by minor amendments to which response is albeit required. Defendant relies on the statement in United States v. L. D. Caulk Co., 114 F.Supp. 939, 940 (D.Del. 1953) that an "amended pleading pro tanto supersedes the pleading which it amends * * * ." See also Slavenburg Corporation v. Boston Insurance Company, 30 F.R.D. 123, 126 (S.D. N.Y. 1962). Thus, says defendant, the amendment does not reopen the right to respond to the entire pleading, and response is limited to the superseding material. Neither of the cases cited deals with the issue here, however, and the Court finds no authority directly relevant.

Whether or not the amended pleading supersedes the original wholly or *pro tanto* does not dispose of the problem.

---

censed to use the PVA patent and seeks to provide an alternative ground for relief.

3. These agreements are the 1944 and 1949 agreements referred to in n. 1, supra.

Rule 15(a) makes clear that plaintiff was obliged to plead in response. That rule does not direct a response to the "amendment," as it might have, but to the "amended pleading." A party securing leave to amend performs a noteworthy chronological feat. His amendment normally relates back to the date of the original pleading, Fed.R.Civ.P. 15(c), and the amended pleading is treated as if it had been filed on that date. Since the amending pleader chooses to redo his original work, and receives the benefit of this *nunc pro tunc* treatment, he can hardly be heard to complain that claims filed against him are improper because they should have been asserted in response to his original pleading.

Finally, Rule 13(a) commands that a pleader assert at the time of serving "the pleading" any claims the pleader has against the opposing party, if his claims arise out of the transaction or occurrence which is the subject matter of the opposing party's claims. The response to the amended pleading contemplated in Rule 15(a) is a "pleading,"[4] and plaintiff was entitled to state his counterclaims at the time of serving it.

Defendant's interpretation of Rule 13(f) would transform it from a means of mitigating hardship into a device for creating it. The rule provides that a party who failed to exercise his right to plead counterclaims may do so with leave of court. It does not say that the opportunity to plead counterclaims of right having once existed and passed, it can never arise again. Not only will the language not bear such an interpretation, but the effort to impose it is contrary to the canon of construction contained in Rule 1.[5]

Even if plaintiff's counterclaims required leave of court, defendant's motions to strike would be denied. Leave should be granted to plead omitted counterclaims, even though omitted by inexcusable neglect, "when justice requires." Fed.R. Civ.P. 13(f), Smith Contracting Corp. v. Trojan Const. Co., 192 F.2d 234, 236 (10th Cir. 1951). It is clear that what began as a simple contract suit has blossomed into full-scale patent and antitrust litigation. The entire course of dealing between the parties from 1944 until suit was filed has been put in issue. The validity of the important patents will be contested, and whether royalties were due and owing under any or all of the agreements will have to be determined. Justice would not be served by striking the counterclaims; serious questions of res judicata would arise from the failure to present them here; and their trial in a separate action would only duplicate much of what will happen here. No prejudice to defendant appears, and no claim of surprise is made.

Defendant asserts, however, that the first counterclaim must be dismissed for improper venue. Plaintiff counters that the counterclaim is within the Court's ancillary jurisdiction and venue is irrelevant.

Defendant's objection is troublesome, because to overrule it will in effect permit plaintiff to do indirectly what it could not have done directly, bring an action for patent infringement against defendant in the District of Delaware. Similar results of course obtain whenever doctrines of pendent and ancillary jurisdiction are invoked "to complete adjudication of interrelated matters * * *." Lesnik v. Public In-

---

4. Rule 7(a) lists a "reply to a counterclaim denominated as such" as one of the pleadings permitted by the rules. That plaintiff's pleading responds to an amended counterclaim does not destroy its character as a reply.

5. Rule 1 provides in pertinent part:
   "[These rules] shall be construed to secure the just, speedy, and inexpensive determination of every action." Fed. R.Civ.P. 1.

dustrials Corporation, 144 F.2d 968, 973–974 (2d Cir. 1944). As Judge Clark noted in *Lesnik,* "jurisdiction is not extended by mere devices making possible more complete adjudication of issues in a single case, when based upon jurisdictional principles of long standing * * *. Obviously a mere broadening of the content of a single federal action must not be confused with the extension of federal power * * *." Id. at 973. The threshold question is whether, if plaintiff's first counterclaim is within the Court's ancillary jurisdiction, venue qualifications beyond those required for the original action are necessary.

In United States v. Acord, 209 F.2d 709, 714 (10th Cir. 1954), the court held that venue in a third-party proceeding ancillary to the main action could "rest upon the venue in the main proceeding." In Lesnik v. Public Industrials Corporation, supra, the court reached a similar result with respect to venue objections by three third-party defendants brought in to respond with the plaintiff to defendant's counterclaim. See also Dickey v. Turner, 49 F.2d 998 (6th Cir. 1931); Morrell v. United Air Lines Transport Corp., 29 F.Supp. 757 (S.D.N.Y. 1939). In all these cases, the ancillary action could not have been brought as an original proceeding because of improper venue. Although no case has dealt with a counterclaim by plaintiff whose venue is challenged, no reason appears to reach a different result simply because the claim could not have been asserted alone. If plaintiff's counterclaim arises out of the transaction or occurrence which is the basis for defendant's claims, it should be before the Court. The same policy which mitigates the rigidity of the venue requirements for third-party actions, resolution of all logically related claims in one lawsuit, applies with equal force here.

■ In Great Lakes Rubber Corporation v. Herbert Cooper Co., 286 F.2d 631, 633, 634 (3d Cir. 1961), Judge Biggs discussed the proper inquiry for determining whether a counterclaim is ancillary. The test, he said, is whether the counterclaim bears a "logical relationship" to the opposing party's claim. A "logical relationship" exists when separate trials would involve substantial duplication of effort and time. Thus, "Where multiple claims involve many of the same factual issues, or the same factual and legal issues, or where they are offshoots of the same basic controversy between the parties, fairness and considerations of convenience and economy require that the counterclaimant be permitted to maintain his cause of action."

■ Defendant charges plaintiff, inter alia, with attempting to monopolize interstate commerce by seeking royalties under the PVA patent, knowing that it (plaintiff) has no basis for the patent.[6] The patent's validity and plaintiff's right to collect royalties under it having been put in issue, plaintiff's counterclaim is logically related to defendant's counterclaim. Separate trials would involve duplicate determinations of validity, scope and use of the patent, a duplication which the principles of ancillary jurisdiction forbid. The motion to dismiss for improper venue must therefore be denied.

Defendant moves to strike plaintiff's second counterclaim as redundant, since it is coextensive in part with the complaint. If there is a redundancy, it is neither confusing nor prejudicial. The Court will not strike the entire counterclaim, but will hear a motion directed to specific duplications if defendant desires to present one. Proper instructions at trial will avoid any problem presently foreseen.

Defendant moves to strike plaintiff's third counterclaim on the ground that it

---

6. Defendant thus invokes an independent jurisdictional basis for its own counterclaims. Whether plaintiff's counterclaim is ancillary to the jurisdiction of the complaint or of defendant's counterclaim need not be discussed.

is redundant and to dismiss it for failure to state a claim. The counterclaim is not redundant. It is not based on the license agreement supporting the complaint, but asserts rather a right to recover the value of benefits conferred on defendant with a reasonable expectation of payment. It is an alternative to the complaint, inserted here to secure relief if proof of the PVA and R–1 patents' inclusion in the license agreement fails.

 The counterclaim should not be dismissed "unless it appears to a certainty that plaintiff is entitled to no relief under any state of facts which could be proved in support of the claim." 2A Moore, ¶ 12.08, p. 2274, cases cited. Defendant urges that the only remedy for unauthorized use of patented subject matter is by suit for infringement in the federal courts and that plaintiff's attempt to invoke state common law of unjust enrichment or quasi-contract must fail. Conceding defendant's argument, however, does not mandate dismissal of the counterclaim assailed. In Lear, Inc. v. Adkins, 395 U.S. 653, 674–675, 89 S. Ct. 1902, 23 L.Ed.2d 610 (1969), the Supreme Court declined to decide the limits of state authority to protect ideas which are the subject matter of a patent application. A long line of respected precedent imposes an obligation on one who receives inventive ideas under circumstances justifying an expectation of compensation or creating a fiduciary relationship to pay their reasonable value. Matarese v. Moore-McCormack Lines, 158 F.2d 631 (2d Cir. 1946); Saco-Lowell Shops v. Reynolds, 141 F.2d 587 (4th Cir. 1944); William A. Meier Glass Co. v. Anchor Hocking Glass Corp., 95 F. Supp. 264 (W.D.Pa. 1951); Picard v. United Aircraft Corp., 128 F.2d 632, 636–638 (2d Cir. 1942); see also Tempo Instrument, Inc. v. Logitek, Inc., 229 F. Supp. 1, 3 (E.D.N.Y. 1964) (unfair competition).

If, therefore, plaintiff demonstrates that it disclosed information to defendant prior to issuance of the two patents, that it expected compensation therefor and that defendant knew compensation was expected, and that defendant accepted and used such information to its benefit, plaintiff will have proved its claim. Any remedy for non-contractual use after the patents issued, however, must be in the nature of an action for infringement. Tempo Instrument Co., Inc. v. Logitek, Inc., supra; Painton & Co. Ltd. v. Bourns, Inc., 164 U.S.P.Q. 595, 596 (S.D.N.Y. 1970). See also Compco Corp. v. Day-Brite Lighting, Inc., 376 U.S. 234, 84 S.Ct. 779, 11 L. Ed.2d 669 (1964); Sears, Roebuck & Co. v. Stiffel Co., 376 U.S. 225, 84 S.Ct. 784, 11 L.Ed.2d 661 (1964). Because it does not appear that the counterclaim provides no grounds for relief, the motion will be denied.

Submit order in accordance herewith.