691 P.2d 787

SNAKE RIVER EQUIPMENT COMPANY, an Idaho Corporation, Plaintiff-Counterdefendant, Cross Claimant-Respondent,

and

First American Title
Company, Plaintiff,

v.

Marion W. CHRISTENSEN and Elaine Christensen, husband and wife, Defendants-Counter Claimants-Third Party Plaintiffs-Appellants,

and

Madison Cooperative Associations, Inc., an Idaho Corporation, et al., Defendants-Respondents.

No. 14275.

Court of Appeals of Idaho.

Nov. 8, 1984.

Rehearing Denied Dec. 31, 1984.

Petitions for Review Denied
March 15, 1985.

Alan L. Morton (argued), and Callis A. Caldwell, of Johnson & Olson, Pocatello, for defendants-counter claimants-third party plaintiffs-appellants.

Earl Blower (argued), Stephen D. Hall and Reed L. Moss, of Peterson, Moss, Olsen, Meacham & Carr, Idaho Falls, for plaintiff-counterdefendant, cross claimant-respondent Snake River Equipment Co.

John B. Kugler, of Pocatello, for defendants-respondents Christman & Hopkins, Inc. and Recycle Contractors, Inc.

WALTERS, Chief Judge.

Suit was instituted by Snake River Equipment Company (SRE) to collect from Marion and Elaine Christensen certain debts arising out of three conditional sales contracts, a note and an open account, and also to foreclose the personal and real property liens created to secure those debts. The Christensens filed counterclaims against SRE and a third-party complaint against Huron Manufacturing Corporation, the manufacturer of an Easi-pour curb and gutter machine the Christensens had purchased through SRE. In their pleadings the Christensens alleged breach of warranty by both Huron and SRE and also alleged that SRE had wrongfully repossessed and disposed of collateral securing the debts owed to SRE. Summary judgment was entered for SRE on all six counts of the complaint and the Christensens appeal, as-

serting error by the lower court on several issues. We affirm.

In part I of the opinion, we address the issues raised by the Christensens concerning the disposition of collateral repossessed by SRE. The Christensens maintain that SRE was erroneously permitted to pursue multiple remedies after the Christensens' default, and that SRE was not entitled to a deficiency judgment after the repossessed collateral was sold. In part II we discuss the Christensens' attempt to respond to an amended complaint filed by SRE. We consider in part III whether the summary judgments entered on behalf of SRE were certifiable for appeal. In part IV we address the Christensens' allegations of unconscionable conduct by SRE. Finally, in part V we consider whether the summary judgment should have been entered prior to foreclosure of a deed of trust. Because each issue raised is relevant only to particular facts or procedural occurrences, those items will be discussed as needed in the respective parts of this opinion.

## I

The Christensens' first two issues on appeal concern the disposition of collateral repossessed by SRE. During the period 1973 to 1975, SRE sold to the Christensens a new International tractor model 454, a new International tractor loader-backhoe, and a new Simms cab. The Christensens also bought used equipment from SRE during this period, including a crawler-dozer, a 12 yard pull scraper, and a trencher and blade for the model 454 tractor. Pursuant to Article 9 of the Uniform Commercial Code, I.C. § 28–9–101, *et seq.*, SRE financed the sales and retained a security interest in the equipment. In its complaint filed on May 17, 1976, SRE alleged in counts four and five that the Christensens were in default on payments to SRE for the equipment. SRE asked the court for an order authorizing repossession and sale of the collateral. SRE was granted summary judgments on July 9 and October 13, 1976 on its claims in counts four and five.

Thereafter, SRE reacquired and, except for the used scraper, resold the equipment.

■ The Christensens argue on appeal that SRE could not repossess and sell the collateral as authorized by the U.C.C. once SRE elected to pursue a judicial remedy. The Christensens also assert that summary judgment for a deficiency entered after SRE disposed of the collateral was improper because the notice of sale and commercial reasonableness requirements of the U.C.C. were not met. We disagree.

### A

The election of remedies issue is controlled by I.C. § 28–9–501(1) which authorizes the remedies available to a secured party when his debtor is in default. Section 501(1) provides:

When a debtor is in default under a security agreement, a secured party has the rights and remedies provided in this part and except as limited by subsection (3) those provided in the security agreement. He may reduce his claim to judgment, foreclose or otherwise enforce the security interest by any available judicial procedure .... *The rights and remedies referred to in this subsection are cumulative.* [Emphasis added.]

The Christensens support their position with pre-code authority that rigidly enforced the election of remedy rule. The U.C.C. drafters, however, intended section 501(1) to eliminate election problems. *See* 2 G. GILMORE, SECURITY INTERESTS IN PERSONAL PROPERTY § 43.7 at 1209–10 (1965); T. WHITE AND R. SUMMERS, UNIFORM COMMERCIAL CODE, § 26.4 at 1090–94 (2d ed.1980).

An early discussion of this issue after the U.C.C. was adopted occurred in *In Re Adrian Research and Chemical, Inc.*, 269 F.2d 734 (3rd Cir.1959). The *Adrian* court held that the debtor "did not waive his right to rely on the collateral when he proceeded by execution and levy to enforce the judgment on the note against the debtor." 269 F.2d at 738. The cases since *Adrian* consistently construe section 501 to permit the pursuit of alternate remedies by

the secured party. *See, e.g. Ruidoso State Bank v. Garcia*, 92 N.M. 288, 587 P.2d 435 (N.M.1978) (a secured party is not precluded from levying on the collateral under the security agreement by first suing on the debt and obtaining a default judgment); *Peoples v. National Bank of Washington v. Peterson*, 7 Wash.App. 196, 498 P.2d 884 (1972) (the secured party is entitled to institute an action on the promissory note and obtain judgment for the unpaid balance, to sell the collateral in the secured party's possession and, in addition, to judicially foreclose upon the security in the event the sale is abandoned).

▪ We believe the district court properly interpreted I.C. § 28–9–501. Accordingly, we hold that the trial court did not err by allowing SRE to repossess and sell the collateral after receiving judgment on the underlying notes.

### B

After receiving summary judgment authorizing sale of the collateral, SRE repossessed and sold the collateral. Thereafter, the Christensens moved to vacate the summary judgments; SRE made cross-motions seeking approval of its disposition of the collateral and a summary judgment for the resulting deficiency. The Christensens appeal from the trial court's entry of judgment for a deficiency, contending that summary judgment was improper because no notice of the sales was given and because the sales were not conducted in a commercially reasonable manner.

▪ Article 9 of the U.C.C. requires that a creditor's disposition of the repossessed collateral be "commercially reasonable." Further, the creditor must give notice to the debtor of the time and place of a public sale or the time after which a private sale will be effective. I.C. § 28–9–504. In Idaho, failure of the secured party to dispose of the repossessed collateral in a commercially reasonable manner or to give proper notice to the debtor raises a presumption

that the fair market value of the collateral at the time of repossession was equal to the outstanding debt. *Mack Financial Corporation v. Scott*, 100 Idaho 889, 606 P.2d 993 (1980). The district court found, and SRE does not deny on appeal, that SRE failed to give the requisite notice. Thus, SRE was required to rebut a presumption that the Christensens owed no deficiency in order to recover.

▪ We hold, as did the district court, that SRE presented sufficient evidence to rebut the presumption that no deficiency existed.[1] SRE presented written estimates of the equipment's value from independent experts. The costs incurred in repossessing and repairing the property to make it saleable were carefully documented and the sale proceeds were credited to the amount owed. This evidence showed both the fair market value of the equipment, and that the sales were conducted in a commercially reasonable manner. No evidence contradicting SRE's documentation was submitted by the Christensens. The presumption having been rebutted, and no genuine issue of material fact otherwise existing, the district court could grant summary judgment for a deficiency. *See* I.R. C.P. 56(c).

The Christensens maintain, however, that summary judgment was improper because a genuine issue of material fact did exist. An issue of fact arose, they insist, when they alleged that the sales of the repossessed collateral were not done in a commercially reasonable manner. No facts were presented to the trial court by the Christensens to support their claim of commercial unreasonableness.

▪ We believe the Christensens' argument is misplaced. Even were the disposition of the collateral commercially unreasonable, the Christensens would be entitled to no more than they received as a result of SRE's failure to give adequate notice; i.e., a presumption that the value of the collat-

---

1. The district court first considered the effect of SRE's inadequate notice in 1978, two years before *Mack Financial* was decided. After *Mack*

*Financial* was published, the Christensens moved to vacate the deficiency summary judgments, which motion was denied.

eral equaled the amount of the indebtedness. *See Mack Financial Corp. v. Scott, supra.* Having already received the aid of the presumption, it would not further benefit the Christensens to litigate the commercial reasonableness of SRE's disposition of the repossessed equipment.

We conclude that SRE was not barred from repossessing and selling the collateral by first seeking a judicial remedy. Further, we find no error by the trial court in granting summary judgment for a deficiency following sale of the model 454 tractor and other equipment.

## II

The Christensens' next issue on appeal concerns their response to an amended complaint filed by SRE. After the summary judgments previously discussed had been entered, but before they had become final according to I.R.C.P. 54(b), SRE moved to amend its complaint. SRE's motion was granted and the amended complaint adding a sixth count was filed. Count six alleged that the Christensens granted in 1975 a deed of trust, naming SRE as beneficiary, to secure the Christensens' purchase of an Easi-pour curb and gutter machine that was the subject of count one. SRE sought to foreclose the deed of trust. Counts two through five were amended to allege that the deed of trust also secured all other debts owed to SRE. In their answer to the amended complaint, the Christensens alleged new defenses to counts four and five, even though the claims asserted in those counts already had been decided by summary judgment in favor of SRE. A motion by SRE to dismiss the new defenses was granted by the district court. The district court held the Christensens' additional defenses were barred by principles of res judicata and SRE received summary judgment on count six.

The Christensens urge on appeal that SRE's amended complaint rendered the original complaint null and void and, as a result, created a right to plead new defens-

es. We are not persuaded by the Christensens' argument.

Once a responsive pleading has been served, a party may file an amended pleading only with the written consent of the adverse party or by leave of the court. I.R.C.P. 15(a). Although leave to amend is to be freely given, the trial court has broad discretion to permit or disallow an amended pleading, *Jones v. Watson*, 98 Idaho 606, 570 P.2d 284 (1977), and a pleading may be amended even after judgment has been entered. *See* I.R.C.P. 15(b); 6 WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE, Civil § 1489 (1971); *Kaup v. Western Casualty and Surety Co.*, 432 F.Supp. 922 (D.C.Mont.1977). The parties do not dispute the propriety of permitting SRE to amend its pleading, but disagree as to the effect on the proceedings once the amended complaint was filed. I.R.C.P. 15(a) provides a ten-day response, and there is no doubt that the Christensens had a right to respond to the claims in the amended complaint. *See Farber v. Howell*, 105 Idaho 57, 665 P.2d 1067 (1983) (defendants had a responsibility to respond to the amended pleading). However, the extent to which a party may amend its pleadings remains subject to the discretion of the trial court. *Jones v. Watson, supra.* Here the trial court exercised its discretion in favor of not allowing the Christensens to raise new defenses to causes of action already determined by the court.

The parties cite no authority either supporting or contradicting a right to plead new defenses in response to an amended complaint filed after entry of summary judgment. Nor did our own search reveal any cases directly on point. An analogous issue was considered in *Joseph Bancroft and Sons, Co. v. M. Lowenstein and Sons, Inc.*, 50 F.R.D. 415 (D.C.Mont.1970). The defendant in that case was granted leave to amend its counterclaims. The plaintiff filed a reply to the defendant's amended pleading and, without seeking leave to amend its own complaint, asserted three new claims of its own. The district court denied defendant's motion to strike the

plaintiff's new claims, and said that "[s]ince the amending pleader [the defendant] chooses to redo his original work, ... he can hardly be heard to complain that claims filed against him are improper because they should have been asserted in response to his original pleading." 50 F.R.D. at 419. Although this statement arguably supports the Christensens' position, it was made in a context significantly different from the developments in this case. The *Joseph Bancroft* court was considering counterclaims and the applicability of F.R.C.P. 13(a) and 13(f). Additionally, the parties' claims had not already been adjudicated on a summary judgment motion. We also note that other cases factually similar to *Joseph Bancroft* have reached conclusions contrary to the holding in that case. *See Owens-Illinois, Inc. v. Lakeshore Land Co., Inc.,* 610 F.2d 1185 (3rd Cir.1979) *and Chrysler Corp. v. Fedders Corp.,* 540 F.Supp. 706 (S.D.N.Y. 1982).

 With the exception of adding a new count, the amended complaint did not materially alter the original complaint, nor did it subject the Christensens to different or increased liability, although the new count put the Christensens' real property at more direct risk of loss than before the amendment. The issues surrounding the parties' liability had been decided almost four years earlier on summary judgment and the amended complaint merely alleged an additional source of recovery for SRE. Further, the Christensens' new defenses arose from facts already existing when the original complaint was filed and they could have brought all the claims in their initial pleading. The rule proposed by the Christensens would hopelessly prolong, in this case, already protracted litigation and abrogate the policy of the Idaho Rules of Civil Procedure to secure a just, speedy and inexpensive determination of every legal proceeding. I.R.C.P. 1(a). Accordingly, we are unpersuaded the trial court abused its discretion by permitting the Christensens to respond to count six but disallowing them to plead new defenses to SRE's claims in counts four and five already decided on summary judgment.

## III

 We next consider the Christensens' assertion that the trial court erred in certifying the partial summary judgments for appeal pursuant to I.R.C.P. 54(b). Because the third-party claims and amended counterclaims had not been decided, the Christensens believe error occurred when the district court certified the summary judgments for appeal. We disagree. Rule 54(b) I.R.C.P. provides in pertinent part:

When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross claim, or third party claim, or when multiple parties are involved, the court may direct the entry of a final judgment upon one or more but less than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of the judgment .... If any parties to an action are entitled to judgments against each other such as on a claim and a counterclaim, or upon cross claims, such judgments shall be offset against each other and a single judgment for the difference between the entitlements shall be entered in favor of the party entitled to a larger judgment.

A rule 54(b) certificate of finality will be set aside where its entry by the trial court amounts to an abuse of discretion. *See Christensen v. Potratz,* 100 Idaho 352, 597 P.2d 595 (1979); *Pichon v. L.J. Broekemeier, Inc.,* 99 Idaho 598, 586 P.2d 1042 (1978).

Here the rule 54(b) certificate was entered on May 19, 1981, a year after the amended complaint was filed and some five years after the original complaint filing date. Summary judgment on counts two, three and four was entered on July 9, 1976; summary judgment on count five was entered on October 13, 1976. None of the summary judgments were made final until a 54(b) certificate was issued in 1981.

 The trial court had numerous opportunities to evaluate the posture of the

case and the parties' various arguments during the five years of litigation following entry of the first summary judgments. On July 22, 1978, the Christensens filed a motion to vacate the summary judgment on counts four and five. After a hearing, the trial court denied the Christensens' motion and granted SRE's cross-motion for a summary judgment on the deficiency resulting from the sale of the collateral mentioned in counts four and five. On September 11, 1978, SRE moved for summary judgment on count one and on the Christensens' counterclaims. Huron Manufacturing, the third-party defendant, moved for summary judgment against the Christensens on their third-party complaint. A hearing was held and on August 24, 1979, the trial court granted SRE's motions and denied the Huron motions. Another hearing was held on February 25, 1980 to consider SRE's motion to file an amended complaint. SRE made another motion on May 5, 1980 and yet another hearing was held, this one to determine whether the Christensens' third-party claims could be tried in a trial separate from the SRE-Christensen proceedings. SRE's motion for separate trial was granted on July 15, 1980. SRE's motion for summary judgment on count six was filed on September 17, 1980, the hearing was held October 21, 1980. Before the trial court ruled on SRE's latest motion, the Christensens moved to set aside the summary judgment on counts four and five on the belief that *Mack Financial Corporation, supra,* required reversal of those judgments. A hearing was held on the Christensens' motion on January 5, 1981. Finally, on April 22, 1981, the district court issued an order and memorandum granting SRE's motion for summary judgment on count six and denying the Christensens' motion to quash the summary judgment on counts four and five. Final judgment, along with the rule 54(b) certificate, was filed on May 19, 1981.

On this record, we cannot say the trial court abused its discretion in issuing the 54(b) certificate. All issues between SRE and the Christensens had been resolved on summary judgment. The Christensens'

claim against Huron had been severed for separate trial. We find no error by the trial court in certifying the judgments for appeal.

## IV

The Christensens also contend that the district court erred by failing to find unconscionable conduct by SRE. The Christensens believe SRE acted unconscionably by requiring the additional security of the deed of trust for the purchase of the Easipour machine and in disclaiming warranties on the machine. They do not attack any specific provision of the deed of trust, but the Christensens maintain SRE took unfair advantage of their financial condition.

Economic duress or business compulsion as a defense in a contract action has been considered occasionally by our Supreme Court. When first confronted with the business compulsion argument, the Idaho Supreme Court held:

> Business compulsion is not established merely by proof that consent is secured by pressure of financial circumstances; or that one party insisted upon a legal right and the other party yielded to such insistence. Neither will a mere threat to withhold from a party a legal right which he has an adequate remedy to enforce, constitute duress. Generally, the demand by one party must be wrongful or unlawful, and the other party must have no other means of immediate relief from the actual or threatened duress than by compliance with the demand.

*Inland Empire Refineries, Inc. v. Jones,* 69 Idaho 335, 339–40, 206 P.2d 519, 522 (1949).

In *Lomas & Nettleton v. Tiger Enterprises, Inc.,* 99 Idaho 539, 585 P.2d 949 (1978), the court adopted the requirements for economic duress established in *W.P. Grimshaw Co. v. Nevil C. Withrow Co.,* 248 F.2d 896 (8th Cir.1975). *Grimshaw* held that the following three elements must be present to establish economic duress: (1) one side involuntarily accepted the terms of another; (2) the circumstances

permitted no other alternative; and (3) the existing circumstances were the result of coercive acts of the opposite party. *Grimshaw*, 248 F.2d at 904.

The Christensens first raised their unconscionability argument in response to SRE's motion for summary judgment on count one. The district court found no evidence to indicate that SRE had coerced the Christensens or attempted to take advantage of their alleged weakened financial condition. Nor did the court find any evidence of fraudulent or deceitful conduct by SRE. Summary judgment on count one was entered against the Christensens. They urge on appeal that summary judgment was improper because a genuine issue of material fact was raised by their allegation of unconscionability. We disagree.

■■■■ A trial court is not bound by the pleadings when determining whether a genuine issue of material fact exists. When a motion for summary judgment has been made, all affidavits, depositions and interrogatories are to be considered in conjunction with the pleadings. I.R.C.P. 56(c); *Petricevich v. Salmon River Canal Company*, 92 Idaho 865, 452 P.2d 362 (1969). Creating only a slight doubt as to the facts will not defeat a summary judgment motion; a summary judgment will be granted whenever on the basis of the evidence before the court a directed verdict would be warranted or whenever reasonable minds could not disagree as to the facts. *Petricevich v. Salmon Canal Co., supra; First Security Bank of Idaho, N.A. v. Absco Warehouse, Inc.*, 104 Idaho 853, 664 P.2d 281 (Ct.App.1983).

■■■ The record reveals none of the elements necessary to prove economic duress. The Christensens initially intended to buy a new Easi-pour machine, but their distressed financial condition prevented a lender from extending credit for that purchase. Although an SRE representative tried to dissuade the Christensens from making the purchase, SRE ultimately agreed to finance the purchase of a used machine only if the Christensens granted SRE a deed of trust as additional security.

This is no more than one party insisting upon a legal right and the other party yielding to such insistence. *Inland Empire Refineries, Inc. v. Jones, supra. See also Foster v. Knutson*, 84 Wash.2d 538, 527 P.2d 1108 (1974) (the supplemental mortgage on all respondents' real property given as further security was freely bargained for and the trial court erred in refusing to grant an immediate foreclosure of the supplemental mortgage); *Newland v. Child*, 73 Idaho 530, 254 P.2d 1066 (1953) (economic duress cannot be predicated upon demands that are lawful, or the threat to do that which the demanding party has a legal right to do). On the record in this case, insistence by SRE upon a supplemental deed of trust as additional security does not amount to unconscionable conduct.

The trial court also concluded as a matter of law that the warranty disclaimers were valid. SRE disclaimed all warranties on the used Easi-pour machine in an addendum to the contract signed by Marion Christensen. The addendum in part stated:

3. That he [Marion Christensen] is buying the said machine AS IS WITHOUT WARRANTY OF ANY CHARACTER EXPRESSED OR IMPLIED, OF ANY NATURE WHATSOEVER;

4. THAT SNAKE RIVER EQUIPMENT COMPANY MAKES NO WARRANTY OR REPRESENTATIONS OF ANY NATURE REGARDING THE CONDITION OF SAID MACHINE OR ITS ABILITY TO PERFORM ANY SPECIFIC PURPOSE; AND THAT SNAKE RIVER EQUIPMENT COMPANY ASSUMES NO RESPONSIBILITY WHATSOEVER FOR THE CONDITION OR THE OPERABILITY OF SAID MACHINE .... [Capitalization in original.]

■■■ We agree with the trial court that the warranty disclaimer meets the requirements of I.C. § 28–2–316. That statute requires disclaimers to be conspicuous and in writing. All implied warranties are excluded if the goods are sold "as is." I.C. 28–2–316(3). Here, the contract addendum was executed solely to exclude warranties

and was voluntarily signed by Marion Christensen. The single purpose of the addendum and the capitalized type make the disclaimers conspicuous; i.e., "it is so written that a reasonable person against whom it is to operate ought to have noticed it." I.C. 28–1–201(10). Because the addendum satisfies I.C. 28–2–316, it is a valid warranty disclaimer. *See Glenn Dick Equipment Co. v. Galey Construction, Inc.*, 97 Idaho 216, 541 P.2d 1184 (1975) (a disclaimer printed in bold type on the back of the lease signed by the parties was an effective disclaimer of all implied warranties). Thus, neither is the requirement of the supplemental deed of trust nor are the warranty disclaimers unconscionable. We find no error by the trial court, and therefore affirm the summary judgments entered below.

## V

Finally, in respect to the deed of trust, the Christensens argue that the district court erred by allowing foreclosure *after* a deficiency judgment had been entered. They contend that such a foreclosure violated a requirement in the trust deed statutes, I.C. § 45–1512, that such foreclosure must *precede* judgment on the debt secured by the deed of trust. We believe the Christensens' argument is misplaced. The judgment simply served to determine the debt remaining after the *personal* collateral had first been liquidated, thus establishing the true balance secured by the trust deed. We hold the Christensens' contention in this regard to be without merit.

SRE asks for attorney fees on appeal. The deed of trust provides for payment of attorney fees incurred in enforcing it. Accordingly, SRE is entitled to attorney fees on appeal. Costs and attorney fees to respondent, Snake River Equipment Company.

BURNETT and SWANSTROM, JJ., concur.