707 P.2d 513

**BUTTE COUNTY BANK,**
**Plaintiff-Respondent,**

v.

**George J. HOBLEY and Iris H. Hobley,**
**husband and wife,**
**Defendants-Appellants.**

No. 15589.

Court of Appeals of Idaho.

Oct. 3, 1985.

J.D. Hancock of Smith, Hancock, Moss & Dalling, Rexburg, for defendants-appellants.

Alan C. Stephens of St. Clair, Hiller, Wood, McGrath, St. Clair & Baker, Idaho Falls, for plaintiff-respondent.

SWANSTROM, Judge.

The Hobleys borrowed $24,000 from the Butte County Bank, signing a promissory note and a security agreement covering their farm machinery, farm products and livestock. When the bank was not paid it brought suit for judgment on the promissory note and for claim and delivery of the collateral. A stipulated judgment was entered against the Hobleys, and the collateral eventually was sold. The sale did not generate proceeds sufficient to satisfy the judgment. The Hobleys, alleging defects in the sale, moved for an order declaring the judgment to be satisfied. The trial court denied the motion and this appeal followed. We affirm.

The collateral that was sold and credited against the judgment included the Hobleys' farm machinery, their cattle and their 1981 and 1982 hay crops. The cattle were sold by the Hobleys. The bank took possession of the farm machinery and sold it at an auction. The hay was sold by the bank through various private sales. The Hobleys' contentions on appeal are: (1) The trial court erred in holding that the bank gave proper notice of the equipment and hay sales as required by Article 9 of the Idaho Uniform Commercial Code (UCC). (2) The court erred in ruling that the sales were conducted in a commercially reasonable manner. (3) It was error to hold the bank was entitled to a deficiency judgment. (4) Consent and approval for repossession do not waive the requirement of notice prior to the sales of hay.

■ We first must decide whether Article 9 of the UCC applies to this case. Since the bank obtained judgment on the promissory note prior to utilizing the self-help remedies available under its security agreement and Article 9, the question is whether Article 9 remedies are available to a secured party after that party becomes a judgment creditor. We believe that they are, in the instant case. The stipulated judgment contemplated as much by the following language:

> The parties have stipulated through their counsel that plaintiff should receive judgment by this court as prayed for in its complaint on file herein subject to the limitation that plaintiff would be unable to execute on said judgment or repossess their collateral until after August 30,
>
> . . . .
>
> . . . .
>
> Further, plaintiff is entitled to immediate possession of the following personal property: all crops, livestock, animals, feed, farm products, equipment, and supplies of debtors, which are situated and/or located on, but not limited to: [property description], however, no execution nor repossession shall take place before August 30, 1982.

Clearly the bank could have ignored the security agreement and pursued satisfaction of the judgment through execution and sheriff's sale. Instead, after allowing the Hobleys an opportunity to sell the collateral, the bank chose to repossess and sell it. The bank took possession of the farm equipment, but left the hay on the Hobleys' farm where buyers could pick it up. By giving the bank the option of repossessing

the collateral, the judgment authorized the use of self-help remedies which are governed by Article 9. The default provisions contained in Part 5 of Article 9 recognize and protect the interest of both the secured creditor and the debtor in default. As noted, in this case, the judgment contemplated that after the agreed delay period the bank could employ self-help remedies rather than proceed with execution through a sheriff's sale. Under such circumstances, sound policy suggests that Article 9 control a post-judgment disposition of collateral by the secured party to ensure that the debtor receives reasonable credit against the judgment. The code supports this conclusion in I.C. § 28–9–501(1) by providing that a secured party not only has the rights contained in Part 5, but may also avail himself of judicial procedures including obtaining judgment on his claim. Subsection (1) also provides that the rights and remedies referred to are cumulative. In *Snake River Equipment Co. v. Christensen,* 107 Idaho 541, 691 P.2d 787 (Ct.App.1984) we held that a secured party is allowed to repossess and sell collateral after receiving judgment on the underlying note. We now add that when a secured party does so, compliance with Article 9 of the UCC is required.

The Hobleys contend that the bank failed to give them notice of any of the sales sufficient to satisfy I.C. § 28–9–504(3). This section authorizes the secured party to sell collateral only in a commercially reasonable manner, and with exceptions not applicable here, "reasonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor, ...." The Hobleys argue that the language "shall be sent" requires a written notice to be given. It is undisputed that this was not done for either the equipment auction or the private sales of hay. The trial court found that the Hobleys did have actual notice of the auction and the time after which the hay would be sold. This notice was provided orally by agents of the bank. The Hobleys also contend that the sales were not con-

ducted in compliance with I.C. § 28–9–504(3) which requires that "every aspect of the disposition including the method, manner, time, place and terms must be commercially reasonable."

As a remedy for these alleged failures, the Hobleys urge us to adopt the absolute bar theory. Under this theory a creditor who fails to comply with the requirements governing disposition of repossessed collateral is barred from receiving a deficiency judgment. *See* cases cited in *Mack Financial Corp. v. Scott,* 100 Idaho 889, 606 P.2d 993 (1980). However, in *Mack Financial* the Idaho Supreme Court adopted the rebuttable presumption approach to deficiency judgments. This approach

requires the secured party in an action for a deficiency judgment to prove that it [complied] with the requirements of notice and commercial reasonableness contained in I.C. § 28–9–504(3). If the secured party proves compliance it is then entitled to a deficiency judgment if a deficiency exists. However, if the court finds that notice of the sale to the debtor was defective or that sale of the collateral was not commercially reasonable, it will be presumed that the fair market value of the collateral at the time of repossession was equal to the debt. If unrebutted this presumption will deny the secured party a deficiency judgment. The burden is then on the secured party to prove by competent evidence the fair market value of the collateral at the time of repossession. If the secured party carried this burden it will become entitled to a deficiency judgment.

*Id.* at 892, 606 P.2d at 996. This approach has subsequently been followed in Idaho. *Massey Ferguson Credit Corp. v. Peterson,* 102 Idaho 111, 626 P.2d 767 (1980); *Snake River Equipment Co. v. Christensen,* 107 Idaho 541, 691 P.2d 787 (Ct.App. 1984). We will follow the rule in this case.

Procedurally, the bank is not asking for a deficiency judgment here. Rather the Hobleys request that the proceeds from the

sale of the collateral be deemed as full satisfaction of the judgment against them. As we have held, because the judgment permitted the self-help remedies used by the bank, Article 9 controls the issue of whether the bank is entitled to the deficiency between the proceeds from the collateral and the judgment debt. Ordinarily, the first question then would be whether the bank conducted the sales in compliance with the notice and commercial reasonableness provisions of I.C. § 28–9–504(3). However, this question loses significance if the bank presented adequate proof of the market value of the collateral to rebut a presumption that it equalled the outstanding debt. If the bank met this burden then it is entitled to pursue the remainder of its judgment even if it did not comply with I.C. § 28–9–504(3). We will address this aspect of the problem because in this case it is dispositive.

 The district judge found that the prices received for the farm machinery at public auction, and for the hay through private sales, were equal to the fair market value of these items. The value of the farm machinery was sharply disputed at the hearing. Each side presented expert testimony regarding the equipment's value. The Hobleys' expert had never viewed the equipment and made his evaluation on the assumption that the machinery was in good shape. The bank's witnesses, including the person who picked up the equipment, gave a much lower evaluation. The judge, as trier of fact, chose to give more weight to the bank's witnesses. Under I.R.C.P. 52(a) we will not disturb his findings unless they are clearly erroneous. Clear error will not be found where the judge's findings are supported by substantial and competent, though conflicting evidence. *Bengoechea v. Bengoechea*, 106 Idaho 188, 677 P.2d 501 (Ct.App.1984). The task of weighing the conflicting evidence is reserved for the trier of fact. *Id.* Accordingly we will not disturb the judge's findings concerning the value of the collateral sold by the bank. Since the bank received the fair market value for the collateral, it is entitled to collect the remainder of its judgment

whether or not it complied with I.C. § 28–9–504(3).

The district judge found that the sales were conducted in a commercially reasonable manner, and that the Hobleys had actual oral notice of the auction sale and of the time after which the hay would be sold. These findings are supported by the record. The judge ruled that oral notice is sufficient to comply with I.C. § 28–9–504(3). There is a split of authority on this question, and it has not been decided by appellate courts in Idaho. *See* Annot., 11 A.L. R.4th 234 (1982). Although the question is presented by this case, we need not decide it since the outcome of this appeal would be unaffected by the determination. We bypass the resolution of whether the bank complied with the notice requirement of I.C. § 28–9–504(3) because in any event the bank presented sufficient evidence to rebut the presumption that the fair market value of the collateral equals the outstanding debt. We reserve a ruling on the oral-written notice question for a case where the ruling will be necessary to the decision. We can do so because the Hobleys have not shown that the oral notice they received has caused them any prejudice.

 Notice to the debtor is a separate requirement under I.C. § 28–9–504(3). It also comes into play in the determination of commercial reasonableness. *See Westgate State Bank v. Clark*, 231 Kan. 81, 642 P.2d 961 (Kan.1982). The purpose of notice is "to protect the debtor's right of redemption and to enable the debtor to enliven the concourse of bidders by any method." *Id.* at 971. The oral notice served these purposes in this case. The bank's representative encouraged Mr. Hobley to attend the auction to "stand behind his equipment." Two months after the auction Mr. Hobley died. Mrs. Hobley was given time to sell the hay. When her attempts failed, including advertising in the newspaper, she was informed that the bank would have to sell the hay. She agreed on the condition that her daughter and son-in-law receive half of the hay for putting it up. Thus the issue

presented by appellants' brief—that consent and approval for repossession of the hay do not waive the notice requirement—simply misstates the finding made by the judge. Assuming for the moment that written notice is needed to satisfy the notice element of I.C. § 28–9–504(3), the oral notice provided in this case was nonetheless sufficient to protect the Hobleys' interest in a commercially reasonable sale.

The Hobleys assert other grounds to conclude that the sale was not conducted in a commercially reasonable manner. However, even if one or more of these grounds were sufficient for us to hold that the sales were not conducted in a commercially reasonable manner, the Hobleys would not prevail. Under the rule of *Mack Financial, supra,* they would have the benefit of the same rebuttable presumption that arises when notice to the debtor is not given. Here, also, that presumption has been rebutted by competent and substantial, although conflicting, evidence showing that "the fair market value of the collateral at the time of repossession" was obtained at the sales.

■ Finally, the Hobleys assert that they did not receive credit for all of the hay that was sold by the bank. As previously noted, the judgment gave the bank the right to immediate possession of the hay. The bank did not exercise that right at first in order to give the Hobleys the chance to sell the hay. Even when the bank did give notice of its intent to sell the hay, the hay was left on the Hobley farm where buyers could pick it up. Some of the hay was to go to the Hobleys' daughter and son-in-law for putting it up. The rest was collateral. The bank could not account for all of the hay that was allegedly available for sale. The Hobleys asked for a credit against the judgment for the missing hay. They contend that the judgment gave the bank immediate possession of the hay and therefore the risk of loss was on the bank. The court found that the hay was located on the Hobleys' farm and under their control until it was sold. Even if we were to agree with the Hobleys and find that constructive possession was with the bank, I.C. § 28–9–207(2)(b) places the risk of loss on the Hobleys.

■ The bank asks for attorney fees on appeal. The security agreement obligates the debtor to pay attorney fees for collecting the debt or "realizing on the property" incurred "in both trial and appellate courts." Accordingly, we hold that the bank is entitled to reasonable attorney fees for this appeal.

The order of the trial court denying the Hobleys' motion to compel satisfaction of the judgment is affirmed. Costs and attorney fees to respondent, Butte County Bank.

WALTERS, C.J., and BURNETT, J., concur.