941 P.2d 932

**Dale L. GNEITING, Plaintiff–Appellant,**

v.

**IDAHO ASPHALT SUPPLY, INC., an Idaho corporation, Defendant–Respondent,**

and

**Salt Creek Welding, Inc., a Wyoming corporation, Defendants.**

No. 22534.

Court of Appeals of Idaho.

May 5, 1997.

Hiller, Benjamin & Associates, Idaho Falls; Anderson Nelson Hall Smith, Idaho Falls, for appellant. Marvin M. Smith argued, Idaho Falls.

Hopkins, Roden, Crockett, Hansen & Hooper, Idaho Falls, for respondents. Katherine S. Moriarty argued, Idaho Falls.

LANSING, Judge.

This is an appeal from a district court's order granting the defendant's motion for summary judgment in a personal injury action. The plaintiff-appellant was an employee of an independent contractor and was seriously injured while working on the defendant's property. The district court held that the defendant did not owe the contractor's employee a duty of care. For the following reasons, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

Defendant Idaho Asphalt Supply, Inc., is engaged in the business of formulating and selling asphalt products. In August of 1992, Idaho Asphalt contracted to purchase from Salt Creek Welding, Inc. two used petroleum storage tanks, each with a capacity of 15,000 barrels. The contract required that Salt Creek disassemble, transport, and reassemble the storage tanks at Idaho Asphalt's facility near Blackfoot, Idaho. The contract also required that Salt Creek supply all of the tools, equipment and labor for the project. Salt Creek hired Dale Gneiting to work as one of its welders on the reassembly phase of the project. In the course of that work, Gneiting was severely injured when a piece of equipment on which he was standing became detached from a crane and fell thirty feet to the ground. Subsequently, Gneiting filed a personal injury action against Idaho Asphalt and Salt Creek. The claim against Salt Creek was dismissed without prejudice and is not at issue in this appeal. Idaho Asphalt filed a motion for summary judgment, which was granted by the district court. The court concluded that Idaho Asphalt owed no duty of care to Gneiting, and therefore bore no liability, because uncontroverted evidence established that Idaho Asphalt did not have control over the work being performed on the tank construction project or over the equipment that caused Gneiting's injury.

Gneiting has raised two issues on appeal. First, he contends that the district court applied the wrong standard to determine whether Idaho Asphalt owed him a duty of care. Second, he argues that the district court erred in holding that Gneiting presented insufficient evidence to raise a factual issue regarding whether Idaho Asphalt exercised control over the construction project.

## ANALYSIS

Under common law principles governing liability for negligence, no liability arises unless the individual from whom relief is sought owed a duty of care to the injured party. *Vickers v. Hanover Const. Co.,* 125 Idaho 832, 835, 875 P.2d 929, 932 (1994); *Bowling v. Jack B. Parson Cos.,* 117 Idaho 1030, 1032, 793 P.2d 703, 705 (1990). Generally, a principal is not liable for the torts of an independent contractor.[1] *Gates v. Pickett & Nelson Construction Co.,* 91 Idaho 836, 842, 432 P.2d 780, 786 (1967); *Sloan v. Atlantic Richfield Co.,* 552 P.2d 157, 160 (Alaska 1976); *Horner v. Hammons,* 916 S.W.2d 810, 814 (Mo.Ct.App.1995); W. Page Keeton et al., PROSSER AND KEETON ON THE LAW OF TORTS § 71 (5th ed.1984); RESTATEMENT (SECOND) OF TORTS § 409 (1965). The most widely accepted explanation for this rule is that since the principal has no right of control over the manner in which the independent contractor's work is to be done, the contractor, rather than the

---

1. There are numerous exceptions to this general rule. Many of them are referenced in sections 410—429 of the RESTATEMENT (SECOND) OF TORTS (1965).

principal, is the proper party to be charged with the responsibility for preventing the risk, and bearing and distributing it. PROSSER AND KEETON, *supra;* RESTATEMENT (SECOND) OF TORTS § 409 cmt. b. It follows that this general rule on nonliability is inapplicable when the principal actually retains control of the manner, means or method of performance of work undertaken by the contractor. *Vickers,* 125 Idaho at 836, 875 P.2d at 933; *Gates, supra; Sloan, supra; Horner, supra;* RESTATEMENT (SECOND) OF TORTS § 414. If the principal owns the premises where the work is being done and remains in control of the premises, he also owes the employees of the contractor a duty to exercise ordinary care in the management and inspection of the premises to keep the premises in reasonably safe condition and to warn of concealed dangers which are known to the owner or could be discovered by the exercise of reasonable care. *Walton v. Potlatch Corp.,* 116 Idaho 892, 898 & n. 2, 781 P.2d 229, 234 & n. 2 (1989).

In this case, Gneiting argues that the district court applied an incorrect and overly restrictive standard in determining whether Idaho Asphalt had retained or exercised the degree of control necessary to incur liability for Gneiting's injuries. In its memorandum decision granting summary judgment, the district court indicated that Idaho Asphalt would bear liability only if it maintained "exclusive control" over all aspects of Salt Creek's performance on the tank assembly project. We agree with Gneiting's position that the district court employed the wrong standard.

In identifying exclusive control as the standard, the district court relied on *Vickers v. Hanover Const. Co.,* 125 Idaho 832, 875 P.2d 929 (1994), where the Idaho Supreme Court dealt with essentially the same question presented here—whether owners or occupiers of property owe a duty of care to the employees of an independent contractor. In *Vickers,* a landowner contracted with a general contractor for the construction of an apartment complex. The framing subcontractor, Pyramid, contracted with Weightman, an independent contractor, for construction of some of the framing. Weightman, in turn, hired Vickers

to help frame the buildings. Vickers died as a result of injuries sustained while working on the construction project. In a subsequent action brought against the landowner and the general contractor by Vickers' survivors, the trial court granted summary judgment on the ground that neither of those defendants owed a duty of care to Vickers. The Supreme Court affirmed the summary judgment on appeal, holding that the plaintiffs failed to refute the defendants' evidence that the subcontract between the general contractor and Pyramid gave Pyramid "exclusive control over all aspects of the means, manner and method of performance of the work to be performed under the framing contract." In the present case, it appears that the district court interpreted *Vickers* to mean that the landowner or principal will not bear liability for an on-the-job injury to the employee of an independent contractor unless the landowner/principal has retained "exclusive control" over all aspects of the work.

In our view, this was not a correct reading of *Vickers.* Rather, the Court in *Vickers* was simply explaining that the subcontract in that case gave exclusive control over the framing work to the framing subcontractor. Because the plaintiffs had not controverted the defendants' evidence that all control was relinquished to the framing subcontractor, the plaintiffs did not meet their burden to show that the defendants had retained any degree of control upon which they could be charged with a duty of care to the decedent.

The relevant standard in determining whether the landowner or other principal owes a duty of care to the employees of an independent contractor is "control," not "exclusive control." In *Gates,* 91 Idaho at 842, 432 P.2d at 786, the Idaho Supreme Court described the rule as one allowing liability where the principal "retains or exercises control over the work of the subcontractor or his servant, other than a limited power of general supervision for the purpose of seeing that the subcontractor did the work properly according to the plans and specifications." Likewise, in *Vickers,* the Court stated that the question whether the owner or general contractor owed the decedent a general duty of ordinary care "turns on the issue of con-

trol." Although the level of control necessary to impose liability is something less than exclusive control, as indicated in *Gates,* the principal's degree of control must go beyond mere inspections to assure compliance with the contract. In *Vickers,* the Supreme Court held that a right of inspection to determine whether the contractor's work conformed to contract specifications was a degree of control that was insufficient to create a duty of care on the part of the principal. *Vickers,* 125 Idaho at 836, 875 P.2d at 933.

With the appropriate standard in mind, we must review the record to determine whether the evidence before the district court warranted summary judgment in favor of Idaho Asphalt. Idaho Rule of Civil Procedure 56(c) requires the trial court to enter summary judgment "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In reviewing an order granting summary judgment, this Court applies the same standard employed by the trial court when it initially ruled on the motion. *Idaho Schools for Equal Educ. Opportunity v. Evans,* 123 Idaho 573, 578, 850 P.2d 724, 729 (1993). Every reasonable inference presented by the record will be drawn in favor of the party opposing the motion. *Tingley v. Harrison,* 125 Idaho 86, 89, 867 P.2d 960, 963 (1994); *Idaho Schools,* 123 Idaho at 578, 850 P.2d at 729. If reasonable people could reach different conclusions based on the evidence, the motion must be denied. *Farm Credit Bank of Spokane v. Stevenson,* 125 Idaho 270, 272, 869 P.2d 1365, 1367 (1994); *Olsen v. J.A. Freeman Co.,* 117 Idaho 706, 720, 791 P.2d 1285, 1299 (1990). However, a mere scintilla of evidence or only slight doubt as to the facts is insufficient to withstand summary judgment; there must be sufficient evidence upon which a jury could reasonably return a verdict for the party resisting the motion. *Corbridge v. Clark Equipment Co.,* 112 Idaho 85, 87, 730 P.2d 1005, 1007 (1986); *Snake River Equipment Co. v. Christensen,* 107 Idaho 541, 549, 691 P.2d 787, 795 (Ct. App.1984).

In support of its motion for summary judgment, Idaho Asphalt presented evidence that it had exercised no control or management over Salt Creek's manner or method of erection of the petroleum tanks; that all tools, equipment and workers required for assembly of the tanks were supplied by Salt Creek; and that Gneiting received directions for his work from no one other than Salt Creek's foreman. Gneiting asserts, however, that evidence which he presented in response to the motion raises factual issues as to whether Idaho Asphalt exercised control over the manner and method of Salt Creek's work. Gneiting has enumerated nineteen facts in evidence which he contends demonstrate that Idaho Asphalt had some degree of control over the tank assembly project. We conclude, however, that these alleged facts do not show that Idaho Asphalt had any control over the manner in which Salt Creek performed its work or over the equipment that caused Gneiting's injury. Instead, they can more accurately be characterized as Idaho Asphalt's actions to define the scope of the work to be done by Salt Creek, prepare the site for Salt Creek's work, and inspect Salt Creek's work product to determine whether it was done in conformity with the contract specifications.

Only one aspect of Gneiting's evidence merits further discussion. Gneiting presented the affidavit of Evan Woolstenhulme, a welder for Idaho Asphalt who worked at the Blackfoot facility at the time of Gneiting's accident. In his affidavit Woolstenhulme stated that Bryan Stromberg, Idaho Asphalt's operations manager, outlined "what would be done at the Blackfoot site and how work was to be managed, supervised, handled and who was assigned various responsibilities." Woolstenhulme also stated that his own responsibilities included the repair of tank leaks and that Stromberg had directed Woolstenhulme on how to perform tank penetrations and cuts, how to construct walks and ladders and how to install insulation. Although at first blush these allegations may yield an impression that Idaho Asphalt's operations manager was heavily involved in supervising the tank assembly work, on closer inspection this implication is dispelled. Woolstenhulme was an employee of Idaho

Asphalt, not of Salt Creek, and Bryan Stromberg's supervision of Woolstenhulme's work therefore provides no evidence that he asserted control over work done by Salt Creek. Although the Woolstenhulme affidavit indicates that Woolstenhulme worked on petroleum tanks "at the Blackfoot site," it nowhere states that he worked on the particular tanks that were being assembled by Salt Creek. Therefore, the affidavit provides no evidence that Idaho Asphalt exercised control over the work performed under Salt Creek's contract.

In the absence of evidence of control by Idaho Asphalt over the performance of its independent contractor, other than the right to require compliance with contract specifications, Idaho Asphalt was entitled to a ruling that it owed no duty of care to the contractor's employee, Gneiting.

■ As an alternative argument, Gneiting asserts that Idaho Asphalt was by law Gneiting's "employer" and therefore owed him the duty of care that all employers owe to their employees. Gneiting relies upon the definition of "employer" found in I.C. § 72–102(12) of Idaho's worker's compensation statutes. That section specifies in part that:

> "Employer" means any person who has expressly or impliedly hired or contracted the services of another. It includes contractors and subcontractors. It includes the owner or lessee of premises, or other person who is virtually the proprietor or operator of the business there carried on, but who, by reason of there being an independent contractor or for any other reason, is not the direct employer of the workmen there employed.

Gneiting asserts that under this definition, Idaho Asphalt was his statutory employer even though his direct employer was Idaho Asphalt's independent contractor, Salt Creek.

Gneiting's argument is misplaced and the statute is inapposite. The definition of employer found in Section 72–102(12) governs only the status of the parties under Idaho's worker's compensation laws. The expanded definition of "employer" found in this statute was " 'designed to prevent an employer from avoiding liability under the workmen's compensation statutes by subcontracting the work to others' who may be irresponsible and not insure their employees." *Runcorn v. Shearer Lumber Products, Inc.*, 107 Idaho 389, 393, 690 P.2d 324, 328 (1984), *quoting Adam v. Titan Equipment Supply Corp.*, 93 Idaho 644, 646, 470 P.2d 409, 411 (1970). The present case is not a worker's compensation claim, and no aspect of the worker's compensation laws are at issue here. Therefore, Section 72–102(12) has no bearing upon the question whether Idaho Asphalt owed a duty of care to Gneiting.

In summary, the district court applied an incorrect legal standard to determine the existence of a duty of care. Nevertheless, when the correct standard is applied, summary judgment in favor of Idaho Asphalt is appropriate.

■ Idaho Asphalt has requested an award of attorney fees on appeal. Attorney fees may be awarded to the prevailing party on appeal in a civil action when the appeal has been brought, pursued or defended frivolously, unreasonably or without foundation. I.C. § 12–121; I.R.C.P. 54(e)(1); I.A.R. 41. However, such an award is not appropriate where an appeal presents a genuine issue of law for review. *Gillingham v. Swan Falls Land & Cattle Co.*, 106 Idaho 859, 863, 683 P.2d 895, 899 (Ct.App.1984). In this case, Gneiting raised a legitimate legal issue regarding the standard applied by the district court in determining whether Idaho Asphalt owed Gneiting a duty of care. Therefore, we do not find the appeal unreasonable or frivolous, and Idaho Asphalt is not entitled to attorney fees.

The summary judgment in favor of Idaho Asphalt is affirmed. Costs are awarded to respondent pursuant to I.A.R. 40.

WALTERS, C.J., and PERRY, J., concur.